# NATIONAL LABOR RELATIONS BOARD *v.* INTERNATIONAL VAN LINES

No. 71–895.   Argued October 12, 1972—Decided November 7, 1972

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, BRENNAN, WHITE, MARSHALL, POWELL, and REHNQUIST, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, *post,* p. 53.

*Peter G. Nash* argued the cause for petitioner. With him on the briefs were *Solicitor General Griswold, Samuel Huntington, Patrick Hardin, Norton J. Come,* and *Linda Sher.*

*Norman H. Kirshman* argued the cause for respondent. With him on the briefs was *Louis R. Garcia.*

Briefs of *amici curiae* were filed by *J. Albert Woll, Laurence Gold,* and *Thomas E. Harris* for the American Federation of Labor and Congress of Industrial Organizations, and by *Milton Smith, Jerry Kronenberg,* and *Gerard C. Smetana* for the Chamber of Commerce of the United States.

MR. JUSTICE STEWART delivered the opinion of the Court.

The respondent is a moving and storage company based in Santa Maria, California. In August 1967, Local 381 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America began a campaign to organize the employees of moving and storage firms in the area. By September 21, five of the respondent's employees had signed union authorization cards; it is undisputed that they constituted a clear majority of what would be an appropriate bargaining unit. Instead of demanding recognition by the respondent, the Union on September 21, 1967, petitioned the National Labor Relations Board for certification as the exclusive bargaining agent of the respondent's employees.

Shortly thereafter, on October 2 and 3, the Union held meetings where it was announced that the respondent had at first consented to a representation election but had later withdrawn its consent. It was decided at the October 3 meeting that all of the moving and storage companies involved in the Union organization campaign should be struck, and on October 4, picketing commenced at the respondent's place of business.

Four of the respondent's employees, Robert and Manuel Vasquez, Richard Dicus, and Salvador Casillas, were present at the respondent's premises on the morning when picketing commenced. They refused to cross the picket line. The next morning, Robert and Manuel Vasquez and Richard Dicus received identical tele-

grams which read: "For failure to report to work as directed at 7 A. M. on Wednesday Oct. 4, 1967 you are being permanently replaced. [Signed] International Van Lines." [1] It is undisputed that at the time of the discharges, the respondent had not in fact hired permanent replacements.

Casillas sought reinstatement in late November, and the other three discharged employees made unconditional offers to return to work on December 12. At least as to these three, [2] the respondent refused reinstatement, claiming that it had at that point hired permanent replacements. The Union then went to the National Labor Relations Board with unfair labor practice charges against the respondent.

The Board determined that the labor picketing that commenced on October 4 was activity protected under § 7 of the National Labor Relations Act, 49 Stat. 452, as amended, 29 U. S. C. § 157, and concluded that the subsequent discharges of striking employees discriminated against lawful union activity and were unfair labor practices under §§ 8 (a)(1) and 8 (a)(3) of the Act, 29 U. S. C. §§ 158 (a)(1), (a)(3).

It is settled that an employer may refuse to reinstate economic strikers if in the interim he has taken on permanent replacements. *NLRB* v. *Mackay Radio & Telegraph Co.*, 304 U. S. 333, 345–346. It is equally settled that employees striking in protest of an employer's unfair labor practices are entitled, absent some contractual or

---

[1] Casillas did not receive such a telegram, but the Court of Appeals found that he was discharged at about the same time as the other three, and for the same reasons. 448 F. 2d 905, 909.

[2] There remains some question as to whether Casillas, a part-time employee, was actually denied subsequent employment or whether instead there had been no occasion for the employer to use his services. The Court of Appeals remanded to the Board for a determination of this question—a determination that will affect the amount of back pay, if any, that Casillas is entitled to receive.

statutory provision to the contrary, to unconditional reinstatement with back pay, "even if replacements for them have been made." *Mastro Plastics Corp.* v. *NLRB,* 350 U. S. 270, 278. Since the strike in the instant case continued after the unfair labor practices had been committed by the employer, the Board reasoned that the original economic strike became an unfair labor practice strike on October 5, when the three telegrams were sent. The Board held the four employees to be unfair labor practice strikers and, accordingly, ordered their unconditional reinstatement with back pay.

The Board then sought enforcement of its order in the Court of Appeals for the Ninth Circuit. The Court of Appeals agreed that the labor picketing was a lawful economic strike, and that the discharges of the striking employees were unfair labor practices. 448 F. 2d 905, 910–911. Nevertheless, the Court of Appeals reversed the portion of the Board's order providing for reinstatement with back pay,[3] reasoning as follows:

> "The strikers whose discharges constituted the unfair labor practice were, at the time of their discharges, protesting only the original grievance. Any strikers subsequently discharged might legitimately be considered unfair labor practice strikers, for they would be protesting not only the original grievance but also the subsequent unfair labor practice. The initially discharged strikers were obviously not protesting their own discharges, which had not yet occurred. To assimilate their status to that of their co-workers who had not yet been discharged would eliminate the distinction between [the] economic-striker-reinstatement rule (*Mackay Radio & Tele-*

[3] The Court of Appeals also rejected the Board's finding of an unfair labor practice in the form of conversations between the son of the respondent's president and the employees, 448 F. 2d, at 908–909, but this aspect of the judgment is not before us.

*graph*) and the unfair-labor-practice-striker-rein-statement rule (*Mastro Plastics*) in cases like this one." *Id.*, at 911–912.

Consistent with its determination that the discharged employees were economic strikers entitled to reinstatement only if the employer could not show legitimate and substantial business justifications for refusing to take them back, the Court of Appeals remanded the case for further findings concerning the reasons for the employer's refusal to rehire them. *Id.*, at 912. Because this decision appeared to involve principles important to the administration of the National Labor Relations Act as amended, we granted the Board's petition for certiorari, 405 U. S. 953.

Both the Board and the Court of Appeals have agreed that the labor picketing was a lawful economic strike, and the validity of that conclusion is not before us.[4] Given that hypothesis, the Board and the Court of Appeals were clearly correct in concluding that the respondent committed unfair labor practices when it fired its striking employees. "[T]he discharge of economic strikers prior . . . to the time their places are filled constitutes an unfair labor practice." *NLRB* v. *Globe Wireless,* 193 F. 2d 748, 750; *NLRB* v. *Comfort, Inc.,* 365 F. 2d 867, 874; *NLRB* v. *McCatron,* 216 F. 2d 212, 215. We need not decide, however, whether the Board was

---

[4] The Court of Appeals construed the picketing as a strike for the purpose of forcing the respondent employer to agree to a consent election, 448 F. 2d, at 910, and held this to be protected under the Act. The respondent disagrees. But since no timely cross-petition for certiorari was filed by the respondents, this question is not before us. *Alaska Industrial Board* v. *Chugach Electric Assn.,* 356 U. S. 320, 325; *NLRB* v. *Express Publishing Co.,* 312 U. S. 426, 431–432; *Morley Construction Co.* v. *Maryland Casualty Co.,* 300 U. S. 185, 191. We therefore proceed on the premise that the Union was engaged in protected activity, while intimating no view on the merits of this portion of the decision of the Court of Appeals.

correct in determining that the discharged employees assumed the status 'of unfair labor practice strikers on October 5, 1967, to reach the conclusion that the Court of Appeals erred in refusing to enforce the Board's order of reinstatement with back pay.

Unconditional reinstatement of the discharged employees was proper for the simple reason that they were the victims of a plain unfair labor practice by their employer. Quite apart from any characterization of the strike that continued after the wrongful discharges occurred, the discharges *themselves* were a sufficient ground for the Board's reinstatement order. "Reinstatement is the conventional correction for discriminatory discharges," *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 187, and was clearly within the Board's authority. 29 U. S. C. § 160 (c).

It would undercut the remedial powers of the Board with respect to § 8 violations, and subvert the protection of § 7 of the Act, to hold that the employees' rights to reinstatement arising from the discriminatory discharges were somehow forfeited merely because they continued for a time to engage in their lawful strike after the unfair labor practices had been committed.

The judgment of the Court of Appeals is reversed insofar as it refused to enforce the Board's order that the discharged employees be reinstated with back pay.[5]

*It is so ordered.*

MR. JUSTICE BLACKMUN, concurring in the judgment.

The result mandated by the narrow factual situation presented in this case need not be automatically im-

---

[5] The Court of Appeals remanded to the Board for a determination of whether Casillas had actually been denied employment subsequent to his request for reinstatement, and did not reach the propriety of the bargaining order entered by the Board. We leave these aspects of the Court of Appeals decision undisturbed.

posed whenever an economic striker is discharged before being permanently replaced. Although the Court's opinion speaks only of permanent replacement as a justification for refusal to reinstate an economic striker, the Court has recognized in the past that, in addition to permanent replacement, other "legitimate and substantial business justifications" for not reinstating an economic striker may exist. *NLRB* v. *Fleetwood Trailer Co.*, 389 U. S. 375, 378–380 (1967). The Court is not faced in the present case with other "legitimate and substantial business justifications" because the employer, who bears the burden of proof, asserted only the permanent-replacement justification. The finding of an unfair labor practice here is not to be read, therefore, as necessarily precluding an employer from reliance on appropriate justifications other than permanent replacement.

Since the employer failed to show any business justification arising before the discharges, these workers enjoyed reinstatement rights when they were discriminatorily discharged. I concur in the reversal of the Court of Appeals' judgment because preservation of the rights existing before the workers were discharged is the appropriate remedy to provide "a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination." *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 194 (1941).