**CLINCH VALLEY CLINIC HOSPITAL, a Division of Bluefield Sanitarium, Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 74–2149.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1975.

Decided May 28, 1975.

Harold D. Brewster, Jr., Bluefield, W. Va. (Hudgins, Coulling & Brewster, Bluefield, W. Va., on brief), for petitioner.

Frederick Calatrello, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and ALDRICH * and WINTER, Circuit Judges.

ALDRICH, Senior Circuit Judge.

The Clinch Valley Clinic Hospital, of Richlands, Virginia, respondent in an unfair labor charge, is a private, non-charitable hospital.[1] There is a Hospital building, and an adjacent Clinic, or outpatient building, the entire content of which, including furnishings, belongs to Hospital. The Clinic building is occupied by members of a partnership of doctors, hereinafter the doctors, who have neither stock of any consequence, nor board of directors' control over Hospital. They operate under a contract with Hospital whereby Hospital furnishes the space and equipment, and all personnel, including nurses (hereinafter the assigned nurses) and secretaries. Hospital bills all the patients, and divides the gross receipts with the doctors on an agreed percentage.

All the nurses belong to a union,[2] and on February 13, 1973, seemingly on short notice, something over a quarter of them went out on an economic strike.[3]

---

* Of the First Circuit, sitting by designation.

1. Strictly, Hospital is one of three hospitals operated by a parent company, Bluefield Sanitarium, Inc. The minor complications that this entailed are presently irrelevant, and we simplify the facts.

2. Local 1199—W.Va., National Union of Hospital and Nursing Home Employees, AFL–CIO.

3. Again, the facts are somewhat complicated, here by the fact that the union also represented a separate employee unit, the maintenance employees. The two groups agreed to stick together. Nothing turns on this duality except that it forms a basis for an argument that bargaining as to nurses had not reached an impasse when the strike occurred. The waters are somewhat muddied, and this does not ap-

Included in the strikers were seven of the assigned nurses. The doctors were annoyed by the inconvenience, and immediately expressed the view that because of such unprofessional conduct they did not want the nurses back.[4] When the strike terminated, Hospital took back nurses who had not been replaced, NLRB v. International Van Lines, 1972, 409 U.S. 48, 93 S.Ct. 74, 34 L.Ed.2d 201, but, in the light of the doctors' objections, gave the seven assigned nurses work within the hospital and furnished other nurses to the doctors.[5] It is considered more desirable to be assigned to the Clinic building than to do nursing work inside the hospital. Hospital claims that the strike was settled on the basis that it would not be obliged to give the returning assigned nurses back their positions, but the Board warrantably found otherwise. At least in the absence of any agreement, returning employees are entitled to their previous work, unless "the failure to offer full reinstatement was for legitimate and substantial business reasons." Laidlaw Corp. v. NLRB, 7 Cir., 1969, 414 F.2d 99, 103, cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100. Hospital does not seriously contest the principle, but claims the exception.

■ The only possible difficulty in this case is occasioned by the Board's procedure. Unlike the administrative law judge, it predicated its finding in favor of the nurses on the ground that Hospital and the doctors were a single employer. See, e. g., Radio and Television Broadcast Technicians Local Union 1264, Int'l Bhd. of Elec. Workers, AFL–CIO v. Broadcast Service of Mobile, Inc.,

1965, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (per curiam); Newspaper Production Co. v. NLRB, 5 Cir., 1974, 503 F.2d 821, 826–27; Darlington Mfg. Co. v. NLRB, 4 Cir., 1968, 397 F.2d 760, 765–66, cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567. The complaint, however, made no such claim. Nor were the doctors, although designated "interested parties" and served with a copy of the complaint, named as respondents. In this circumstance one of the Board's panel dissented on the ground that the doctors had not received due process. See Consolidated Edison Co. v. NLRB, 1938, 305 U.S. 197, 233–34, 59 S.Ct. 206, 83 L.Ed. 126. Cf. Fitzgerald v. Haynes, 3 Cir., 1957, 241 F.2d 417, 418–19. We must agree. No matter how much the doctors were notified, relief against them would be at variance with the complaint itself, which made no claim that they were joint employers. We cannot sustain the Board's decision on the basis given.

However, we do not think that in fact Hospital and the doctors were, jointly, a single employer. On the contrary, Hospital, simpliciter, was a single employer. While under the operating agreement Hospital was obliged to furnish nursing service to the doctors, this did not make the nurses the doctors' employees, any more than, without meaning any disparaging comparison, the maintenance workers in the building were the doctors' employees. To the extent possible Hospital would naturally respect the wishes of the doctors in making selections. However, when those wishes involved an unfair labor practice on behalf of Hospital, the doctors' wishes could not be used as an excuse to justify Hospital's unlaw-

pear to us a case to adopt, if there ever should be one, respondent's contention that a strike before impasse, although not necessarily unlawful, cf. NLRB v. Insurance Agents' Int'l Union, AFL–CIO, 1960, 361 U.S. 477, 490–91, 494–95, 498–99, 80 S.Ct. 419, 4 L.Ed.2d 454; International Union, U.M.W. v. NLRB, 1958, 103 U.S.App.D.C. 207, 257 F.2d 211, 215; Darling & Co., 1968, 171 NLRB 801, 803, petition dismissed sub nom., Lane v. NLRB, 1969, 135 U.S.App.D.C. 372, 418 F.2d 1208, is not a protected activity. Cf. Insurance Agents', ante, 361 U.S. at 493–95 & n.23, 80 S.Ct. 419; Textile Workers Union of America, CIO v. NLRB,

1955, 97 U.S.App.D.C. 35, 227 F.2d 409, 410, cert. denied, 352 U.S. 864, 77 S.Ct. 90, 1 L.Ed.2d 73.

4. We may remark, if one were going to name names, that it was much more serious to abandon inpatients than outpatients, but no one claims that Hospital did not have to take back all nurses.

5. As Hospital's personnel director testified, "I don't know if you've ever worked around a group of doctors or not, but it's been my experience in 19 years that you don't argue with them."

ful conduct. The doctors, not having replaced any, could not have refused the nurses had they been their own employees; there is even less excuse for their doing so when they were not.

Nor is there any merit in Hospital's complaint that, the doctors not having been named as respondents, it cannot force them to accept the nurses against their will. There are two answers to this. One is that the Board could commence a new proceeding, naming the doctors as participants in a violation of the Act. An even shorter answer, however, is that, having tendered nursing services by offering the doctors the previously assigned nurses, Hospital would have tendered full performance and the doctors, had they refused, would have remained liable for the full rental. We may suspect it unlikely that the doctors would have accepted the economic consequences of paying double for nursing service.

Indeed, we cannot read the record in this case without believing that the whole performance, or, more exactly, non-performance, was cooked up as a scheme to punish the nurses and avoid obvious obligations under the Act. We are confirmed in our feeling that Hospital was deliberately recalcitrant by the unfair labor practice letter it wrote the nurses during the strike, the far most reasonable interpretation of which was that unless they abandoned the strike forthwith it would not recognize their right under the Act to reemployment if they were not already replaced. In fact, were it not for respondent's proper objection to the reason the Board gave for its affirmance of the administrative law judge's order, we might consider this a frivolous petition warranting the imposition of counsel fees. NLRB v. Smith and Wesson, 1 Cir., 1970, 424 F.2d 1072, 1073 (per curiam); *cf.* Clarion Corp. v. American Home Prods. Corp., 7 Cir., 1974, 494 F.2d 860, 865–66, cert. denied, 419 U.S. 1027, 95 S.Ct. 508, 42 L.Ed.2d 303; Fluoro Electric Corp. v. Branford Associates, 2 Cir., 1973, 489 F.2d 320, 326.

The order of the Board is to be enforced.