TEAMSTERS LOCAL UNION NO. 515, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 88–1413.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 8, 1990.

Decided June 22, 1990.

James F. Wallington, Vienna, Va., with whom Gary S. Witlen, Washington, D.C., and James T. Grady, Gen. Counsel, Boston, Mass., were on the brief, for petitioner. Wilma B. Liebman and Lynn Agee also entered appearances, for petitioner.

Julie E. Broido, Atty., N.L.R.B., with whom Peter D. Winkler, Supervisory Atty., Jerry L. Hunter, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., were on the brief, for respondent.

Chris Mitchell, Palo Alto, Cal., and Maria N. Sorolis, Atlanta, Ga., were on the brief for intervenor.

Before MIKVA, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Concurring opinion filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

The petitioner in this case, Teamsters Local Union No. 515 ("Union"), seeks re-

view of a decision and order of the National Labor Relations Board ("NLRB" or "Board") regarding alleged unfair labor practices committed by Reichhold Chemicals, Inc. ("Reichhold" or "Company") during the course of collective bargaining negotiations between the Company and Union. The Union contends that Reichhold's unlawful bargaining to a point of impasse to secure a "no-access" provision, under which the Union would waive access to the Board during the term of the parties' agreement, was a contributing cause of a strike conducted by bargaining unit employees at Reichhold. The Union contends that, because the employees' job action was caused by the Company's unlawful bargaining demand, the striking employees should be treated as unfair labor practice strikers, with full rights to reinstatement with back pay. We agree. The Board's contrary conclusion is not supported by substantial evidence in the record; therefore, we grant the Union's petition for review on this point.

We deny the Union's petition for review with respect to its other challenges, however. We agree with the Board that, apart from the demand for a no-access provision, Reichhold engaged in lawful "hard bargaining" consistent with the requirements of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 151–169 (1988). We also find no basis for rejecting the Board's holding that the Act does not forbid bargaining parties from negotiating over or agreeing to waivers of the right to strike in protest against unfair labor practices. The Board's interpretation of the Act on this point is a permissible one, to which we must defer. *See, e.g., NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123, 108 S.Ct. 413, 420–21, 98 L.Ed.2d 429 (1987); *United Mine Workers of America, District 31 v. NLRB*, 879 F.2d 939, 944 (D.C.Cir.1989).

## I. BACKGROUND

### A. *Factual History*

In January 1983, Reichhold Chemicals, Inc. and Teamsters Local Union No. 515, the collective bargaining representative for the production and maintenance employees at Reichhold's Kensington, Georgia, plant, commenced bargaining on an initial contract. During 29 bargaining meetings held between January 18, 1983, and February 15, 1984, the parties exchanged proposals and counterproposals. They reached agreement on a number of matters but were unable to agree on a management rights provision or on a no-strike clause, both of which the Union had identified as strike issues. As part of its proposed no-strike clause, Reichhold sought a waiver of the employees' statutory right to strike in protest against unfair labor practices and a waiver of certain statutory rights held by employees to seek redress from the Board and other governmental agencies.

The Union conducted two strike votes: one in August 1983, and one in April 1984. During the August 1983 strike-vote meeting, Union President Logan discussed the Company's proposals on management rights, the grievance procedure, the no-strike clause and various other provisions. Logan did not specifically mention the no-access provision, but he did tell the employees that the Company's proposals would seriously restrict the employees' rights to challenge employer conduct during the term of the agreement. At the urging of the Union leadership, the employees voted unanimously to authorize a strike. Eight months later, on April 1, 1984, Union President Logan again met with the bargaining unit employees to conduct a second strike vote. In discussing the Company's demands, the Union President told the employees that there were items in the proposed management rights provision and the no-strike clause that were unreasonable, outrageous and unlike any he had seen before, and that if the Union agreed to those items it would not have a significant labor agreement. *See Reichhold Chemicals, Inc.*, 288 N.L.R.B. No. 8, slip op. at 12, 1987–1988 NLRB Dec. (CCH) ¶ 19,308 at 33,353 (1988) (*"Reichhold II"*). At the close of the meeting the Reichhold employees voted to strike. It is undisputed that the Company's inclusion of a no-access pro-

vision was a principal reason for the Union's objection to the no-strike clause.

Members of the Union struck Reichhold from April 1, 1984, to April 6, 1984, at which time the striking employees made an unconditional offer to return to work. Twenty-nine members of the Union were informed that they had been permanently replaced during the strike but would be given preferential hiring rights at the Reichhold facility. As of the date of the unfair labor practice hearing, twenty-seven employees had not been recalled.

### B. *Procedural History*

In July 1984, the Union filed unfair labor practice charges with the Board.[1] The Union alleged that Reichhold violated section 8(a)(1) of the Act by threatening to discharge employees who joined or engaged in activities on behalf of the Union; violated section 8(a)(5) of the Act by refusing to bargain in good faith; and violated section 8(a)(3) of the Act by refusing to allow employees to return to work following an unfair labor practice strike and the employees' unconditional offer to return to work. After investigating the charges, the Board's General Counsel issued an unfair labor practice complaint against Reichhold. The Board issued its first decision in this case on November 22, 1985. *See Reichhold Chemicals, Inc.*, 277 N.L.R.B. 639 (1985) (*"Reichhold I"*). The Union and the General Counsel for the Board moved for reconsideration; the Board then issued a supplemental decision and order on March 17, 1988. *See Reichhold II*, 288 N.L.R.B. No. 8, 1987–1988 NLRB Dec. (CCH) ¶ 19,308 (1988).

The Board concluded that Reichhold violated section 8(a)(5) of the Act by negotiating to impasse on a subject that is not a mandatory bargaining subject, namely, the no-access provision included in Reichhold's proposed no-strike clause. *See id.* at 8–10, 1987–1988 NLRB Dec. (CCH) at 33,352–53. The Board concluded, however, that the employees had engaged in an economic

strike, not an unfair labor practice strike, as alleged; accordingly, the Board dismissed the portion of the complaint relating to violations of section 8(a)(3) of the Act. *See id.* at 13, 1987–1988 NLRB Dec. (CCH) at 33,353–54. The Board also determined that Reichhold had engaged in hard bargaining, not unlawful surface bargaining, in its negotiations with Local 515. *See id.* at 5, 1987–1988 NLRB Dec. (CCH) at 33,351. The Board further determined that a union may waive the right to strike in protest of an unfair labor practice and that such a provision is a mandatory subject of bargaining. Local 515 now seeks review of those issues decided against it.

## II. ANALYSIS

### A. *Standard of Review*

In reviewing petitioner's claims, we must uphold the judgment of the Board "unless, reviewing the record as a whole, [we] conclude[ ] that the Board's factual findings are not supported by substantial evidence on the record considered as a whole, 29 U.S.C. § 160(f), or that the Board acted arbitrarily or otherwise erred in applying established law to the facts at issue," *United Food & Commercial Workers Int'l Union v. NLRB*, 880 F.2d 1422, 1429 (D.C.Cir. 1989). *See, e.g., Northern Wire Corp. v. NLRB*, 887 F.2d 1313, 1319 (7th Cir.1989); *Airport Parking Management v. NLRB*, 720 F.2d 610, 614 (9th Cir.1983); *NLRB v. Crystal Springs Shirt Corp.*, 637 F.2d 399, 404 (5th Cir.1981); *NLRB v. Colonial Haven Nursing Home, Inc.*, 542 F.2d 691, 704 (7th Cir.1976); *see also Road Sprinkler Fitters Local Union No. 669 v. NLRB*, 681 F.2d 11, 20 (D.C.Cir.1982) (noting that Board "fairly read the record" in determining purpose of the strike). Here, the record does not furnish substantial evidence to support the Board's conclusion that Reichhold's unfair labor practice of insisting to impasse on the no-access provision did not in part motivate the strike.[2]

---

1. The Union filed an amended charge in August 1984.

2. We understand this case to present the issue whether the Board's determination is supported by substantial evidence in the record, an evidentiary issue, and not a question concerning the

## B. *No–Access Provision*

■ We agree with the Board's determination that Reichhold's insistence to the point of impasse on a waiver of the Union's access to the Board constituted an unfair labor practice.[3] We also agree with the Board[4] that it is unnecessary to decide whether waiving access to the Board is a "permissive" or "illegal" subject of bargaining, because, here, Reichhold pressed the subject to impasse—which it may not do in either event. But we cannot agree that substantial evidence supports the Board's conclusion that the employees' job action that commenced on April 1, 1984, was an economic strike. Rather, we find it clear from the record that Reichhold's unlawful insistence to impasse on the no-access provision was a contributing cause of the strike.

■ If an unfair labor practice committed by the employer is a "contributing cause" of a strike, then, as a matter of law, the strike must be considered an unfair labor practice strike ("ulp strike"). *See, e.g., Road Sprinkler Fitters,* 681 F.2d at 20; *Larand Leisurelies, Inc. v. NLRB,* 523

F.2d 814, 820 (6th Cir.1975). "The employer's unfair labor practice need not be the sole or even the major cause or aggravating factor of the strike; it need only be a contributing factor." *NLRB v. Moore Business Forms, Inc.,* 574 F.2d 835, 840 (5th Cir.1978). "The dispositive question is whether the employees, in deciding to go on strike, were motivated *in part* by the unfair labor practices committed by their employer, not whether, without that motivation, the employees might have struck for some other reason." *Northern Wire Corp. v. NLRB,* 887 F.2d 1313, 1319–20 (7th Cir.1989).[5] The significance of this causation determination is that, unlike employees who strike for economic reasons, unfair labor practice strikers are entitled to reinstatement with back pay, even when they have been replaced. *See NLRB v. International Van Lines,* 409 U.S. 48, 50–51, 93 S.Ct. 74, 76, 34 L.Ed.2d 201 (1972); *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956). An employer's failure to reinstate ulp strikers violates sections 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1), (3). *See NLRB v. Fleetwood Trailer Co.,* 389 U.S.

proper legal standard for establishing causation. Justice Marshall, writing for the majority, and Justice Scalia, dissenting, recently traced the course of these distinct modes of analysis in *NLRB v. Curtin Matheson Scientific, Inc.,* — U.S. ——, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990).

With respect to the instant case, neither the Board's decisions nor its brief suggests that the Board meant to endorse a *legal* principle that an employer's unlawful insistence on a non-mandatory subject can never be a contributing cause of strike absent clear evidence that the employees were fully aware of the nature of the offending contract demand. Indeed, as if to acknowledge the applicability of the substantial evidence test, in its brief the Board says that "the question before the Court is whether the Board was 'required' to draw the factual references urged by the Union and conclude that the waiver of Board access was a contributing cause of the strike." Brief for Board at 43. The Board then cites as supporting authority *Amalgamated Clothing Workers of America v. NLRB,* 334 F.2d 581, 581 (D.C.Cir.1964) (*per curiam*), in which the only "question [was] the sufficiency of the evidence to support the Board's findings." *See* Brief for Board at 43–44.

3. Section 8(a)(5) provides, in relevant part, that "[i]t shall be an unfair labor practice for an employer ... to refuse to bargain collectively

with the representatives of his employees." 29 U.S.C. § 158(a)(5). An employer and the representative of its employees must bargain in good faith with respect to "wages, hours, and other terms and conditions of employment." *See id.* § 158(d). Insistence upon matters *not* within the scope of mandatory bargaining as a condition to any agreement constitutes a refusal to bargain in good faith, in violation of section 8(a)(5). *See, e.g., NLRB v. Wooster Division of Borg–Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958).

4. *See Reichhold II,* 288 N.L.R.B. No. 8, slip op. at 10 n. 19, 1987–1988 NLRB Dec. (CCH) at 33,353 n. 19.

5. *See also NLRB v. Crystal Springs Shirt Corp.,* 637 F.2d 399, 404 (5th Cir.1981) ("Multiple motivation does not deprive the employees of their status as unfair labor practice strikers so long as the employer's unfair labor practice was a contributing cause."); *General Drivers & Helpers Union, Local 662 v. NLRB,* 302 F.2d 908, 911 (D.C.Cir.) ("[I]f an unfair labor practice had anything to do with causing the strike, it was an unfair labor practice strike."), *cert. denied,* 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962).

375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967).

■ It is clear from the record in this case that Reichhold negotiated to impasse on a no-strike clause that included an *unlawful* no-access provision. Reichhold's original proposal provided, in relevant part, that, if an employee engages in any unauthorized strike, slowdown, walk-out or other cessation of work, "the Company shall have the unrestricted right to replace any and all such participants and they shall have no further rights under this Agreement and no action in law or equity or before any administrative agency, including the National Labor Relations Board." Respondent's Original Unauthorized Work Stoppage Proposal of February 24, 1983, Joint Exhibit 1, *reprinted in, Reichhold Chemicals, Inc. and Teamsters Local 515,* Case 10–CA–20331 at Appendix B (May 9, 1985), *reprinted in* Joint Appendix ("J.A.") 29. Reichhold's proposal of October 13, 1983, similarly provided that participants in activities prohibited by the work stoppage article "shall have no further rights under this Agreement and no action in law or equity or before any administrative agency, including the National Labor Relations Board." Respondent's Unauthorized Work Stoppage Proposal of October 13, 1983, General Counsel's Exhibit 8, *reprinted in, Reichhold Chemicals, Inc. and Teamsters Local 515,* Case 10–CA–20331 at Appendix E (May 9, 1985), *reprinted in* J.A. 34. Reichhold continued to insist on the no-access provision through the final four bargaining meetings. *See Reichhold II,* 288 N.L.R.B. No. 8, slip op. at 10, 1987–1988 NLRB Dec. (CCH) at 33,353.

It is uncontested that the Union President indicated at the bargaining table that the no-access provision was a strike issue. It is also undisputed that at the strike vote meeting the Union President told employees that Reichhold's proposals were "unreasonable and outrageous," and that "there were items in the management rights clause and the no-strike clause that he had never seen proposed before. He told those present that if the Union agreed to these proposals they would not have a

significant labor agreement." *See id.* at 12, 1987–1988 NLRB Dec. (CCH) at 33,353.

The Board concluded, however, that "[i]n the absence of any evidence that the strikers even knew about the [Company's] proposal regarding a waiver of access to the Board, we are unwilling to infer from the record evidence in this case that one of the reasons for the strike was the strikers' desire to protest that particular proposal." *Id.* at 13, 1987–1988 NLRB Dec. (CCH) at 33,353. The Board explained that

the information on which the employees acted when they voted to strike is what is crucial in determining if there is a causal connection between the [Company's] insistence on a waiver of employees' rights to go to the Board and the determination to strike. In light of our finding that this proposal was never discussed with employees at either of the strike-vote meetings, we decline to find that this proposal played any part in the employees' decision to strike.

*Id.,* 1987–1988 NLRB Dec. (CCH) at 33,-353–54.

The obvious flaw in the Board's reasoning is that it simply ignores the evidence that proves the point on causation. The dispositive criterion in a case of this sort is the "real and actuating motivation" for the strike. *NLRB v. Pope Maintenance Corp.,* 573 F.2d 898, 906 (5th Cir.1978); *see also NLRB v. Colonial Haven Nursing Home, Inc.,* 542 F.2d 691, 705–06 (7th Cir. 1976) (looking beyond statements of testifying employees to discern true reason for strike). In this case, because the matter of the no-access provision was not specifically discussed at the strike meeting, it is crucial to inquire whether the Union's reasons for recommending a strike can be imputed to the employees who voted for the strike. That inquiry is relatively easy on this record, for it is unrefuted that the employees voted to strike solely pursuant to the Union President's recommendations.

At the hearing before the ALJ, the Company successfully objected to the admission of any evidence from employees as to why they struck. *See* Transcript of Hearing Testimony at 321–22, 333, *reprinted in*

J.A. 296–97, 306. Having excluded this evidence, the Board was constrained to consider only what the employees were told by the Union President in assessing causation. Thus, if the Union leader urged a strike because *he* thought the Company's demands were "outrageous," and the employees then voted to strike, the question of causation is tied directly to the reasons that prompted the Union President to call for a strike. It is undisputed that one of those reasons was the inclusion of a no-access provision in the no-strike clause.

In short, there is no doubt that the concerns of the Union President posed a strike issue from the outset of negotiations. Indeed, the Board specifically found that, with respect to the first strike vote, "[t]he union president's feelings were clearly communicated when he told those present that no self-respecting union would sign such a contract. Convinced by the president's arguments in this regard, the employees voted unanimously to strike at that meeting." *Id. Reichhold II*, 288 N.L.R.B. No. 8, slip op. at 12, 1987–1988 NLRB Dec. (CCH) at 33,353. Furthermore, the evidence in this record plainly reveals that the employees struck because the Union President told them that the Company's demands (which included the no-access provision) were unreasonable and outrageous, that their labor agreement would be meaningless if they acceded to the Company's demands, and that a strike was necessary to break the deadlock in negotiations. *See*

*id.* at 12–13, 1987–1988 NLRB Dec. (CCH) at 33,353. On this record, it must be found that, when the employees voted to strike, they impliedly endorsed their Union President's strong opposition to the no-access provision.

The Board's counsel argued that if the union agent had received proxies from the employees, then the Board, in assessing causation, would look to the agent's reasons for calling the strike. But the Board insists that, because the employees voted directly on the strike issue, their presumed lack of knowledge of the no-access provision is fatal to their causation claim. This line of reasoning is impossible to follow. For one thing, the record indicates that at least five of the employees who participated in the strike vote were involved in the collective bargaining negotiations with the Company. These employees presumably knew, first-hand, of the offending no-access provision. Board counsel argued that knowledge by five employees was insufficient to prove causation, and yet conceded that knowledge by a majority was unnecessary.[6] Counsel could offer no principled basis for determining how much evidence of first-hand knowledge is enough to prove causation.

Furthermore, apart from being illogical, the Board's position seems blind to the nature of union representation. Employees may formally cede authority to a union agent to call a strike;[7] they can also

---

**6.** We do not know how many other employees may have been told by these five employees of the precise disagreement over the no-access provision, because the employees were barred from testifying as to why they voted to strike.

The Board argues that it makes no difference whether the employees understood the meaning of the no-access provision. But this contention merely reinforces the point that the employees' vote was a ratification of the judgment of their union leader.

**7.** The law does not require unions to conduct a vote before calling a strike. *See, e.g., Grossman v. General Drivers, Local 579*, 78 L.R.R.M. 2179, 2182 (1971) (concluding that strike vote requirement "is strictly contractual and concerns a matter between the Union and its respective members, and is not a labor dispute as defined in the National Labor Relations Act, ... and that there is no Federal question involved");

Pope, *Labor and the Constitution: From Abolition to Deindustrialization*, 65 TEX.L.REV. 1071, 1127 (1987) (noting that "[a]lthough unions are not required to conduct a vote before calling a strike, most union constitutions contain strike-vote procedures"); Hyde, *Democracy in Collective Bargaining*, 93 YALE L.J. 793, 801–14, 855 n. 222 (1984) (discussing absence of requirement that employees ratify contracts and noting that "[t]here are no cases holding that members must ratify, and a great many cases rejecting the claim."). Nor may the employer propose requirements regarding strike votes. *See Borg–Warner Corp.*, 356 U.S. at 350, 78 S.Ct. at 723. Such provisions involve "the procedure to be followed by the employees among themselves before their representative may call a strike or refuse a final offer"; a strike vote provision "deals only with relations between the employees and their unions." *Id.; cf. Teamsters Local Union No. 175 v. NLRB*, 788 F.2d 27, 32 (D.C.Cir.

achieve the same result by simply endorsing a union agent's judgment that a strike is necessary. In either case, the union representative's reasons for calling or recommending a strike may provide the basis for determining causation. Here the employees followed their Union leader's recommendation to strike, in part because of his view that the provisions of the no-strike clause were outrageous. In so voting, the employees ratified the Union leader's judgment that they should strike because of the Company's demand for a no-access provision.

In the light of the record before us, we cannot find substantial evidence to support the Board's determination on causation. Thus, we reverse the Board's determination that the strike was an economic strike and remand for modification of its order in accordance with this decision, including reinstatement and a determination of back pay.

## C. *The Union's Challenges to Alleged Surface Bargaining*

■ The Union argues that the substance of the Company's proposals, the Company's failure to concede on any of the terms and conditions of employment encompassed within the management rights clause, and the negotiation to impasse on a provision that was not a mandatory subject are inconsistent with a determination that the Company engaged in good-faith bargaining. *See* Brief for Petitioner at 37–38. Accordingly, the Union claims that the Board erred in concluding that the Company's "overall conduct establishes that it engaged in lawful hard bargaining, rather than unlawful surface bargaining," *Reichhold II*, 288 N.L.R.B. No. 8, slip op. at 2, 1987–1988 NLRB Dec. (CCH) at 33,349–50, and urges the court to find that the Board's determination lacks substantial support in the record. Because we find no

infirmity with the Board's determination on this point, we deny the Union's petition.

While parties to a negotiation are "not required to make concessions or to yield any position fairly maintained," "[r]igid adherence to disadvantageous proposals *may* provide a basis for inferring bad faith." *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1187, 1188 (D.C.Cir.1981) (emphasis added). *See generally* 29 U.S.C. § 158(d). "If a company insists on terms that 'no "self-respecting union" could brook,' *Vanderbilt Products, Inc. v. NLRB*, 297 F.2d 833 (2d Cir.1961), it may not be fulfilling its obligation to bargain." *Id.* at 1188. But the decision regarding "good faith" turns on

> "whether it is to be inferred from the totality of the employer's conduct that he went through the motions of negotiation as an elaborate pretense with no sincere desire to reach an agreement if possible, or that it bargained in good faith but was unable to arrive at an acceptable agreement with the union."

*Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1103 (1st Cir.1981) (quoting *NLRB v. Reed & Prince Mfg. Co.*, 205 F.2d 131, 134 (1st Cir.), *cert. denied*, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953)). "Adamant insistence on a bargaining position ... is not in itself a refusal to bargain in good faith." *Chevron Oil Co. v. NLRB*, 442 F.2d 1067, 1072 (5th Cir.1971). And " '[i]f the insistence is genuinely and sincerely held, if it is not mere window dressing, it may be maintained forever though it produce a stalemate.' " *McCourt v. California Sports, Inc.*, 600 F.2d 1193, 1201 (6th Cir.1979) (quoting *NLRB v. Herman Sausage Co.*, 275 F.2d 229, 231 (5th Cir. 1960)). An inference of bad faith from substantive terms of a proposal always must be drawn with caution. " '[T]he Board may not, either directly or indirectly, compel concessions or otherwise sit in judg-

---

1986) (noting that employee ratification provisions are commonplace and "ensure[ ] some meaningful employee participation in the bargaining process"). "The union is legally required to follow the procedures prescribed in its

constitution for making collective agreements, but the choice of procedures is the union's." Summers, *Ratification of Agreements*, in FRONTIERS OF COLLECTIVE BARGAINING 79 (J. Dunlop & N. Chamberlain eds. 1967).

ment upon the substantive terms of collective bargaining agreements.'" *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 106, 90 S.Ct. 821, 825, 25 L.Ed.2d 146 (1970) (quoting *NLRB v. American Ins. Co.*, 343 U.S. 395, 404, 72 S.Ct. 824, 829, 96 L.Ed. 1027 (1952)).

■ Under this legal standard, we conclude that the Board's determination regarding the Company's "good faith" bargaining is supported by the record. The Board found, and the Union does not dispute, that the Company "was willing at all times to meet and bargain with the Union, attended all scheduled meetings, fulfilled its procedural obligations, exchanged proposals, and shortly after the last meeting notified a Federal mediator that it was willing to bargain with the Union in March." *Reichhold II*, 288 N.L.R.B. No. 8, slip op. at 5, 1987–1988 NLRB Dec. (CCH) at 33,351. We must uphold the Board's determination that there has been no violation of the Act unless it has no rational basis. *See, e.g., United Mine Workers of America, District 31 v. NLRB*, 879 F.2d 939, 942 (D.C.Cir.1989). Here, it does.

D. *Waiver of Right to Engage in Unfair Labor Practice Strike*

■ The Union next claims that the Board erred when it found that Reichhold did not violate the Act by negotiating to impasse on a proposal to waive unfair labor practice strikes. The Union claims that the right to strike in protest of an unfair labor practice is a "non-waivable right," such as the right to engage in union distributions and solicitations. *See NLRB v. Magnavox*

*Co.*, 415 U.S. 322, 325–26, 94 S.Ct. 1099, 1102, 39 L.Ed.2d 358 (1974). We disagree.

Congress' intent is unclear with respect to the specific issue whether a union may contractually waive the employees' right to strike in protest of unfair labor practices, and hence we must defer to the Board's "interpretation of the NLRA as long as its interpretation is rational and consistent with the statute." *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123, 108 S.Ct. 413, 420–21, 98 L.Ed.2d 429 (1987); *see also Ford Motor Co. v. NLRB*, 441 U.S. 488, 496–97, 99 S.Ct. 1842, 1848–49, 60 L.Ed.2d 420 (1979) (noting that Congress delegated to the Board responsibility for defining section 8(d) mandatory bargaining subjects). *See generally Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The Board concluded that "[g]enerally, a no-strike clause is a mandatory subject of bargaining. There is nothing in the Act which prohibits a union from contractually waiving the employees' right to strike over unfair labor practices as long as it satisfies its duty of fair representation." *Reichhold I*, 277 N.L.R.B. at 640 (footnote omitted).

The only inconsistency with the statute claimed by the Union is that such a waiver cannot be made "without jeopardizing fair representation" and compromising the employees' "full freedom of association" in violation of 29 U.S.C. §§ 151, 157. Brief for Petitioner at 44.[8] Obviously, merely bargaining away the right to strike does not impermissibly infringe the "full free-

---

8. Section 1 of the Act provides, in relevant part:

It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

29 U.S.C. § 151.

Section 7 of the Act provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157.

dom of association." *See, e.g., Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705, 103 S.Ct. 1467, 1475, 75 L.Ed.2d 387 (1983); *Local Union 1395, Int'l Bhd. of Elec. Workers v. NLRB*, 797 F.2d 1027, 1031 (D.C.Cir.1986); *Fournelle v. NLRB*, 670 F.2d 331, 338 (D.C.Cir.1982). Indeed, albeit limited, to the extent that the Supreme Court has spoken on this matter, it appears to assume that a union may lawfully waive the right to strike over unfair labor practices. *See Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279, 76 S.Ct. 349, 356, 100 L.Ed. 309 (1956) ("[W]e assume that the employees, by explicit contractual provision, could have waived their right to strike against such unfair labor practices...."); *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983) (noting that courts "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.").

We can find no basis to overturn the Board's decision declining to distinguish between no-strike clauses covering only economic issues and those covering both economic issues and unfair labor practices. There is nothing in the statute that compels such a distinction and the Supreme Court has never endorsed such an analysis. Also, as the Board obviously understood from its decision declaring the illegality of the no-access provision, employees who cannot strike over unfair labor practices are not without legal redress. Thus, we cannot understand the Union's contention that merely agreeing to a complete no-strike clause would breach its duty of fair representation. In any event, although brief, the path of the Board's reasoning is readily discernible, legally sound and not unreasonable. *Cf. Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Accordingly, we must defer to the Board's interpretation of the Act and deny the Union's petition on this point.

## III. CONCLUSION

There is substantial evidence to support the Board's determination that, on the record in this case, the Company engaged in hard bargaining, not surface bargaining. We also find the Board's interpretation of the Act allowing waivers of unfair labor practice strikes to be a permissible one. Thus, we deny the petitions for review on these points.

We conclude, however, that the Board's finding that the Company's insistence to impasse on a provision waiving employee access to the Board was not a contributing cause of the April 1984 strike is not supported by substantial evidence. We grant the Union's petition on this point and remand to the Board for modification of its order in accordance with this decision, including reinstatement and back pay for the strikers.

SILBERMAN, Circuit Judge, concurring:

I am in agreement with my colleagues, but I have the uncomfortable feeling that our mode of analysis—looking at the issue on review as solely a sufficiency of the evidence question—is a good deal closer to Justice Scalia's dissent in *NLRB v. Curtin Matheson Scientific, Inc.*, 110 S.Ct. 1542, than it is to the majority opinion. But if the Board wished here to suggest it drew an inference from the facts, to which we should defer because it is based on either policy choice or expertise, it was so inarticulate as to defeat my efforts to find it. *Compare Georgetown Hotel v. NLRB*, 835 F.2d 1467, 1472 (D.C.Cir.1987) (Silberman, J., dissenting).