**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-1782, 19-1794, 19-1795, 19-1796, 19-1993, 19-1994, 19-1995, 19-1996
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner (Cross Respondent)

v.

ALARIS HEALTH AT CASTLE HILL,

Respondent (19-1782)
Petitioner (19-1993)

ALARIS HEALTH AT ROCHELLE PARK,

Respondent (19-1794)
Petitioner (19-1994)

ALARIS HEALTH AT BOULEVARD EAST,

Respondent (19-1795)
Petitioner (19-1995)

ALARIS HEALTH AT HARBORVIEW,

Respondent (19-1796)
Petitioner (19-1996)
_____

Petition for Review and Cross-Application
For Enforcement of an Order of
The National Labor Relations Board
(Nos. 22-CA-125034, 22-CA-125866, 22-CA-140619)
Nos. 22-CA-124968, 22-CA-125899, 22-CA-140560)
(Nos. 22-CA-125076, 22-CA-125866, 22-CA-131372, 22-CA-140582)
(Nos. 22-CA-125023, 22-CA-125882, 22-CA-140591)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 12, 2020

Before: McKEE, AMBRO, and PHIPPS, <u>Circuit Judges</u>

(Opinion filed: May 4, 2020)

———————————

OPINION[*]

———————————

AMBRO, <u>Circuit Judge</u>

The National Labor Relations Board ("NLRB" or "Board") petitions us to enforce its orders against Alaris Health at Castle Hill ("Castle Hill"), Alaris Health at Boulevard East ("Boulevard East"), Alaris Health at Rochelle Park ("Rochelle Park"), and Alaris Health at Harborview ("Harborview") (collectively "Alaris"). Alaris cross-petitions us to review the Board's orders.

We hold that neither the Board nor the Administrative Law Judge ("ALJ") erred. Accordingly, we grant the Board's petition for enforcement and deny Alaris's cross-petition for review. Alaris violated the National Labor Relations Act ("NLRA") during its initial negotiations with 1199 SEIU United Healthcare Workers East (the "Union"). After Union employees went on strike to protest Alaris's unfair labor practices, Alaris further violated the NLRA by refusing to reinstate certain employees in their positions when they tendered notice of their return. The Board correctly determined that Alaris

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

was ineligible for the "legitimate and substantial business justification" to excuse its delay in reinstating the striking employees. Further, despite Alaris's arguments to the contrary, the Board has no power under the NLRA to exempt the health care industry from reinstating workers after an unfair labor strike.

## I. Factual and Procedural Background

Alaris operates four long-term nursing and rehabilitation facilities in New Jersey: Castle Hill, Boulevard East, Rochelle Park, and Harborview. The Union represents approximately 420 employees across these facilities. In December 2013, Alaris and the Union began negotiations for a successor collective bargaining agreement, as the then-current agreements were due to expire the following spring.

Alaris worked to undermine negotiations from the beginning of the negotiation process. For example, it delayed responding to the Union's information request for three months to prevent the Union from receiving pertinent documents until after the negotiations began. In addition, it never produced the health insurance and daily work schedule information sought by the Union in its supplemental information requests. Finally, on the day the negotiations were set to begin, it refused to bargain in good faith with the Union's chosen bargaining committee. Alaris does not contest these facts on appeal.

By the spring of 2014, the Union began to meet monthly with its members and gradually to increase pressure on Alaris to engage in fair negotiations. In July, the Union held a rally during which it gave news that it was considering a strike. During that period, Boulevard East ordered dietary workers to remove pro-union buttons, while

allowing them to wear company-issued buttons. With the threat of a strike public, Alaris's non-union directors undertook an intimidation campaign. Numerous employees testified that administrators made clear—using explicit threats—they would lose their jobs or be offered fewer hours if they went on strike. These threats often included colorful language intended to make union members feel powerless. For example, Castle Hill Administrator Nelson Maurice Duran warned a Certified Nurse Assistant ("CNA") that she and 17 single mothers would lose their jobs if they went on strike. The record contains similar stories of administrators singling out and interrogating members in all four facilities.

Subsection 8(g) of the NLRA requires unions to provide health care institutions with at least ten days' notice before engaging in a concerted refusal to work. 29 U.S.C. § 158(g). On September 5, 2014, the Union sent Alaris notice of its intent to engage in a three-day unfair labor practices strike. Alaris claims that it did not know how many employees would strike, and accordingly was forced to amend its standard contracts with three staffing agencies to ensure that its facilities would continue to operate without interruption. Regina Figueroa, who provided operations support for Alaris, testified that it had to agree to minimum terms of engagement of four to six weeks to secure the necessary staffing to replace the strikers. She did not identify which Alaris employees negotiated the contracts, nor did her colleagues who testified before the ALJ. Hence, the ALJ did not credit this testimony.

On September 18, the Union made an unconditional offer of return to work for all striking employees. Alaris informed the Union that some of the strikers would not be

4

able to work the next day because of its contractual commitments with staffing agencies. On September 19, Alaris retained eight agency CNAs at Castle Hill rather than fully reinstating fifteen of the former strikers. It also reduced the hours of two strikers once they returned to their jobs. Boulevard East kept only a handful of the agency CNAs it engaged during the strike and refused to reinstate two kitchen aids and six CNAs. These employees faced varying repercussions, including delayed reinstatement, being placed in part-time and floater positions with variable hours, and not receiving overtime opportunities. Three employees could not return to their positions until mid-October. Harborview retained one of the twenty-two agency CNAs. It did not reinstate one employee until October and another until May of the following year. Finally, Rochelle Park retained five of the eleven agency CNAs. On their return, five former strikers faced reduced work hours, demotions, and no overtime opportunities.

The ALJ ruled that Alaris violated § 8(a)(1), (3) and (5) of the NLRA when it refused to provide the requested documents to the Union during the negotiations, declined to negotiate with the Union's chosen committee, used coercive statements in an attempt to stop the strike, and refused to reinstate certain employees in their positions after the strike. It ordered Alaris to cease and desist from all behavior in violation of the NLRA, to reinstate all employees to their former positions, and to make them whole for any lost wages. The NLRB affirmed.

Because the ALJ did not directly address Alaris's claim that it had a legitimate and substantial business justification for not reinstating its employees promptly, the Board's

5

opinion considered this issue at length and rejected it.[1]  The Board petitions us for enforcement of its orders against Alaris.  It cross-petitions for review of those orders.

## II.     Analysis

The Board had jurisdiction over the various cases consolidated before us under 29 U.S.C. § 160(a), and we have jurisdiction over the petition for enforcement and petition for review under 29 U.S.C. §§ 160(e) and (f).  We accept the Board's factual determinations "if they are supported by substantial evidence." *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 151 (3d Cir. 1994).  Similarly, the ALJ's credibility determinations are also "entitled to great deference as long as relevant factors are considered and resolutions explained." *Atl. Limousine, Inc. v NLRB*, 243 F.3d 711, 718 (3d Cir. 2001).  Finally, "our review is plenary over the Board's legal analysis but, '[b]ecause of the Board's 'special competence' in the field of labor relations, its interpretation of the Act is accorded substantial deference.'" *Citizens Publ'g & Printing Co v. NLRB*, 263 F.3d 224, 232 (3d Cir. 2001) (quoting *Pattern Makers' League of N. Am., AFL-CIO v. NLRB*, 473 U.S. 95, 100 (1985)).

---

[1] Although the Board ordinarily grants employers a five-day window to reinstate unfair labor practices strikers, here it held that because Alaris "did not move to promptly reinstate the strikers following their unconditional offer," the grace period did not apply. App. 5 (citing *Drug Package Co.*, 228 NLRB 108 (1977); *Teamsters Local 574*, 259 NLRB 344, 344 n.2 (1981)).

1.  The substantial business justification exception to immediately reinstating

    employees does not apply to unfair labor practices strikes.

We recognize that in limited circumstances an employer will not be able to reinstate its employees immediately after they tender an unconditional offer to return to work from an economic strike. *NLRB v. Int'l Van Lines*, 409 U.S. 48, 50–51, 53 (1972); *see also Pac. Mut. Door Co.*, 278 NLRB 854, 856 n.2 (1986). In contrast, there is no question that unfair labor strikers are entitled to immediate reinstatement. *See, e.g.*, *id.* at 53 ("Unconditional reinstatement of the discharged employees was proper for the simple reason that they were the victims of a plain unfair labor practice by their employer."). Allowing employers who commit unfair labor practices to evade immediate reinstatement "would permit [them] to recruit a new group of employees and to leave without employment some or all of those who had been adversely affected by [their] unlawful infringement of employee rights." *Colonial Press, Inc.*, 207 NLRB 673, 674 (1973), *enforcement denied in part on other grounds in* 509 F.2d 850 (8th Cir. 1975).

The Union's notice provided that its strike was "to protest [Alaris's] ongoing [u]nfair labor [p]ractices and . . . unreasonable bargaining demands." App. 51. Alaris does not dispute its underlying conduct or the strike's categorization. Thus, the Board correctly determined that Alaris cannot benefit from this exception.

2. Alaris is not entitled to an exception from settled law that unfair-labor-practice strikers must be immediately and fully reinstated.

Next, Alaris asks us to extend the legitimate and substantial business justification exception to unfair labor practices strikes that involve healthcare institutions. It contends that Congress recognized healthcare institutions are different when it enacted § 8(g) of the NLRA, and thus the Board erred when it determined Alaris's delayed reinstatement of fair labor strikers violated the Act. We disagree.

In amending the NLRA in 1974, Congress included one relevant exception for health-care institutions: the 10-day pre-strike notice. *See* 29 U.S.C. § 158(g). The amendments did not exempt health care institutions from the obligation to re-hire striking employees after replacements workers had been hired. Congress could have done so, as just two years before those amendments the Supreme Court decided *International Van Lines*, making clear that "that employees striking in protest of an employer's unfair labor practices are entitled … to unconditional reinstatement with back pay, 'even if replacements for them have been made.'" *Int'l Van Lines*, 409 U.S. at 50-51 (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 278 (1956)). But in amending the statute, Congress did not exempt health care institutions from that requirement, and no amount of legislative history can overcome that fact.[2]

---

[2] Because the parties devote considerable attention to legislative history, we note that the legislative history does not support a contrary conclusion. Congress explicitly recognized the special staffing needs of healthcare facilities when it passed the 1974 Healthcare Amendments to the NLRA. Pub. L. No. 93-360, 88 Stat. 395 (1974). The primary function of the amendments was to remove the exemption in the NLRA for nonprofit hospitals and to "embrace . . . their employees within the coverage of the Act."

8

Further, as the Board aptly detailed, even if the legitimate and substantial business justification were available to Alaris, it would not be able to take cover under that exception for at least three reasons. First, the ALJ did not find any credible record evidence that the staffing agencies required lengthy minimum terms before they supplied the temporary workers during the strike. Next, Alaris only retained some of the 74 temporary agency CNAs it engaged in the four facilities after the strike. But it has not submitted any evidence that it was financially liable for the agency employees it did not retain after the strike concluded. Finally, Alaris did not contract with the staffing agencies to replace dietary aides. Yet these employees were also told that they could not immediately return to work.

---

*Laborers' Int'ls. Union of N. Am., AFL-CIO, Local Union No. 1057 v. NLRB*, 567 F.2d 1006, 1010 (D.C. Cir. 1977). During deliberations, the Senate Committee on Labor and Public Welfare noted that "the needs of patients in health care institutions required special consideration . . . ." S. Rep. No. 93-766, at 3 (1974). Accordingly, it included § 8(g)'s ten-day-notice requirement. *Id.* at 4–5.

The Committee was careful to limit its different treatment of healthcare facilities, noting "the public interest demands that employees of health care institutions be accorded the same type of treatment under the law as other employees in our society, and that the notice not be utilized to deprive employees of their statutory rights." *Id*. at 4. Senator Harrison P. Williams, one of the bill's sponsors, added that "this committee understood the issues confronting it, and went as far as it decided to go and no further." 120 Cong. Rec. S22575 (daily ed. 1974) (statement of Sen. Williams), *reprinted in* S. Comm. on Labor and Public Welfare, Legislative History of the Coverage of Nonprofit Hospitals Under the National Labor Relations Act, 1974, at 361 (1974).

This legislative history explicitly undermines Alaris's position and confirms the ALJ's ruling. As the Second Circuit noted when interpreting § 8(g) of the NLRA in another context, "[w]hen Congress addressed an issue with sufficient clarity, a court is not at liberty to deviate from the statutory commands merely because it may find that it would have been wiser for Congress to set the balance otherwise." *Civil Serv. Emps. Ass'n, Local 1000, AFSCME v. NLRB*, 569 F.3d 88, 95 (2d Cir. 2009).

9

Thus, Alaris's claims before us fail.  Accordingly, we grant the Union's petition to enforce the NLRB's orders and deny Alaris's cross-petition.