SAFEWAY STORES, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent and Cross-Petitioner.

No. 80-2175.

United States Court of Appeals, Tenth Circuit.

Oct. 27, 1982.

---

T. H. Eskridge of Boesche, McDermott & Eskridge, Tulsa, Okl., for petitioner.

Victoria A. Higman, Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Collis Suzanne Stocking, Atty., N. L. R. B., Washington, D. C., with her on the brief), for respondent and cross-petitioner.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Safeway Stores, Inc. (Safeway) seeks to set aside and the National Labor Relations Board (NLRB) seeks to enforce an NLRB order requiring Safeway to provide information to the Retail Clerks Union, Local No. 73, Retail Clerks International Association, AFL–CIO (Union) concerning the race and employment status of Tulsa, Oklahoma area Safeway employees.

At the time of the actions giving rise to this case, Safeway and Union were parties to a collective bargaining agreement covering 1500 employees. Article 26 of the agreement provided:

26.1 The Company [Safeway] and its representatives shall not discriminate against any employee on account of race, sex, creed, nationality, color, religion, age or on account of Union affiliation or on account of any legitimate Union activity.

26.2 The Union, its officers, and members shall not discriminate against any employee on account of race, sex, creed, nationality, or age.

[R., Vol. II, at p. 148].

On November 10, 1978 Union President Charles M. Nobles requested the following information from Safeway:

(1) The number of male and female employees, blacks, handicapped, Indians, and Spanish surnamed employees in each classification for all units covered by a contract between Safeway Stores, Inc. and this Local Union.

(2) The hourly wage rate for each such employee.

(3) The number of employees by race, sex, handicapped, and Spanish surname, who have less than 1 years' seniority, 1–2 years' seniority, 3–4 years' seniority, 5–9 years' seniority, 10–19 years' seniority, and 20 or more years' seniority.

(4) The number of persons hired in each classification during the 12-month period immediately preceding the effective date of the information covered in items 1 through 3 above, with a breakdown as to sex, race, handicap, and Spanish surname, showing the sex of all black and Spanish surnamed persons.

(5) The number of promotions or upgrades for the same 12-month period, broken down by race, sex, and Spanish-surnamed persons showing the job level of each upgraded employee prior to and subsequent to each such upgrade and the race, sex, and whether Spanish-surnamed for each of these upgraded employees.

(6) A list of all complaints and charges filed against Safeway Stores, Inc., Tulsa Division, under the Equal Pay Act, Title VII of the Civil Rights Act of 1964, Executive Order 11246, and state fair employment practices law and copies of each complaint or charge relating to employees in bargaining units covered by this Local Union, along with any related documents pertaining to the status of such charges, provided that you may delete therefrom the names of the charging parties.

(7) Copies of the most recent work force analyses filed under Executive Order 11246 and Revised Order 4 of the Office of Federal Contract Compliance Programs for or covering each store or location covered by this Local Union.

[R., Vol. II, at pp. 118–119].

On November 13, 1978, in response to Nobles' request, Paul D. Johnson, branch manager of the Safeway Industrial Relations Department, asked Union to divulge the specific nature of the grievance giving rise to the request. Nobles informed Johnson that the information was necessary to ensure that Safeway was complying with the requirements of Article 26. Further, Nobles assured Johnson that Union would not publicly disclose any confidential information and would assume the photocopying costs. Despite these assurances, however, on February 9, 1979, Johnson informed Union that Safeway would provide none of the information.

Thereafter, on March 16, 1979, Union filed an unfair labor charge contending that Safeway, by refusing to comply with Union's request, had failed to bargain collectively in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act, codified at 29 U.S.C.A. §§ 158(a)(1) and (5) (West).[1] The complaint was argued before an Administrative Law Judge (ALJ) who determined, on February 26, 1980, that Safeway was in violation of §§ 8(a)(1) and

(5). Safeway excepted to the ALJ's findings and sought review before the NLRB. On September 30, 1980, the NLRB affirmed the ALJ's determination and ordered Safeway to produce the requested information.

On appeal Safeway contends that the NLRB's findings are erroneous because the information is not relevant to collective bargaining and because compiling the information would be unduly burdensome.

Unless unsupported by substantial evidence in the record considered as a whole, factual findings of the NLRB are binding and will not be disturbed on appeal. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Meredith Corp. v. NLRB,* 679 F.2d 1332 (10th Cir. 1982); *Crane Sheet Metal, Inc. v. NLRB,* 675 F.2d 256 (10th Cir. 1982); *American Safety Equip. Corp. v. NLRB,* 643 F.2d 693 (10th Cir. 1981).

Safeway argues that, because Union has no duty under the National Labor Relations Act (NLRA) to uncover undetected discrimination, the information was not relevant to collective bargaining and Safeway could not be guilty of an unfair labor practice. A union, as a bargaining representative, is entitled to receive any information which is relevant to its obligation to administer a collective bargaining agreement. *NLRB v. Whitin Machine Works,* 217 F.2d 593 (4th Cir. 1954), *cert. denied,* 349 U.S. 905, 75 S.Ct. 583, 99 L.Ed. 1242 (1955). The test of relevancy is whether, under a liberal discovery-type standard, the information would aid the union in performing its statutory duties. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). Even when the information is objectively relevant, however, a union's request may be denied if its compilation would be unduly burdensome or if the employer's interest in its confidentiality outweighs the union's interest. *NLRB*

---

1. 29 U.S.C.A. §§ 158(a)(1) and (5) provide:

(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \* \*

(5) to refuse to bargain collectively with the representatives of his employees . . . .

v. Truitt Mfg. Co., 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); *Shell Oil Co. v. NLRB,* 457 F.2d 615 (9th Cir. 1972); *Emeryville Research Center, Shell Dev. Co. v. NLRB,* 441 F.2d 880 (9th Cir. 1971).

■ The ALJ found, and the NLRB agreed, that the requested information was relevant to the administration of the collective bargaining agreement and therefore obtainable. In reaching this conclusion, the ALJ and the NLRB relied upon the reasoning in *Westinghouse Electric Corporation,* 239 N.L.R.B. 106 (1978), enforced as modified, *Intern. Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC v. NLRB,* 648 F.2d 18 (D.C.1981), which involved a request for information nearly identical to the request in the present case. In *Westinghouse* the NLRB found that information concerning the ethnic background, sex, and employment status of employees, as well as lists of complaints and work force analyses was obtainable by a union to ensure that an anti-discrimination clause in the bargaining agreement was enforced. The NLRB's findings were modified and enforced in *Intern. Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC v. NLRB, supra.* We agree with the NLRB's determination that the information was relevant.

■ Article 26 of the collective bargaining agreement provides that Safeway will not discriminate against its employees on the basis of sex, race, or age, etc. The court in *International Union* found that when anti-discrimination clauses are inserted into a bargaining agreement, the union has a duty to ensure that the contractual obligations are being met by the employer. We agree. Information pertaining to the anti-discrimination clause, such as the employment status, ethnic background and sex of employees, is therefore relevant to the union as administrator of the agreement and necessary to enable it to perform its duty. Refusal by an employer to supply this information is a violation of Section 8(a)(1) and (5) of the NLRA. *International Union, supra.*

■ Safeway contends that even if the information is relevant, Union has no right to it because the burden created by the time and expense of compiling the information outweighs Union's interest. Safeway's contention is unsupportable for several reasons. First, the only cost objection related by Safeway to Union involved the cost of photocopying the information. Union agreed to pay for those costs. Secondly, during the administrative hearing Gerry Espy, Safeway's employee and public relations manager for the Tulsa Division, testified that much of the information could be extracted from the computer [R., Vol. I, pp. 57, 68, 71] or from other records in Safeway's possession. Therefore, the burden to Safeway might have been exaggerated; in any event, it is not sufficient to overcome Union's need for the information. Finally, the court in *International Union* found, and we agree, that time and pecuniary considerations, though not irrelevant, are not a basis for refusing to supply requested information. Negotiations concerning a means of reducing the employer's burden are proper at the compliance stage but not at the request stage. *International Union, supra.*

The NLRB also found that the requested list of complaints and charges filed against Safeway and bargaining unit employees was relevant and obtainable by Union. In *Westinghouse* the NLRB found that the relevance of the complaint and charges was not obvious and required the Union to specify its need for the information. A showing that the information was necessary to ensure that the charges were not being adjusted by the Equal Employment Opportunity Commission to the exclusion of Union was sufficient to satisfy the demonstration of relevancy.

■ In the present case, the Union stated to Safeway that the charges related to several matters involving Union members pending under Title VII of the Civil Rights Act of 1964 and other statutes. The NLRB found, and we agree, that this rationale satisfied Union's burden of establishing relevancy.

In *Westinghouse* the NLRB found, however, that, although the complaints involving bargaining unit employees were relevant, the names of the persons filing the complaints were not relevant. The NLRB therefore ordered the employer to supply copies of the complaints but to delete the names of the complainants therefrom. In reviewing *Westinghouse,* the court in *International Union* found that mere deletion of the complainants' names did not sufficiently insure the confidentiality of the complaints or protect the privacy interests of the complainants. The court stated its concern that employees would be inhibited in filing their complaints if they knew that copies would be provided to their union representative or to fellow union members. The court held that the union could not obtain actual copies of the complaints, only a compilation of the numbers, types, dates and alleged bases of the complaints filed.

We do not perceive that permitting an employer to provide copies of complaints, with the complainants' names deleted, substantially impairs the privacy interests of union members. A requirement that the complainants' name be deleted is sufficient in our view to protect the members' rights. We, therefore, decline to follow the holding of *International Union* in this regard and adopt instead the NLRB's finding.

Safeway also argues that the requested Work Force Analyses (WFA) are not relevant and that the NLRB erred in requiring their production. A WFA is a listing of job titles within each department ranked from the lowest paid position to the highest paid position. The NLRB found that the WFAs essentially contained the same information as was requested in items 1–5. As the items in requests 1–5 were relevant, the WFAs, too, were relevant. We will not disturb the NLRB's finding.

Finally, Safeway argues that it cannot provide information concerning handicapped employees because it does not have the information in its possession, and thus, under the principles enunciated in *NLRB v. Rockwell-Standard Corp., Trans.*

*& Axle Div.,* 410 F.2d 953 (6th Cir. 1969), cannot be compelled to comply with Union's request. While it was established by Gerry Espy during the administrative hearing that Safeway's computer did not contain a code identifying handicapped employees, there was evidence that alternative means of obtaining the information existed. Espy testified that Safeway had recently undergone an audit by the office of Federal Contract Compliance, and that one purpose of the audit was to identify handicapped employees. [R., Vol. I, pp. 58–59]. Nevertheless, without attempting to achieve a compromise, Safeway simply refused to supply Union with the information. Under *Food Employer Council, Inc.,* 197 NLRB 651 (1972), Safeway had an obligation to provide the information that it possessed, even if not in the form requested, or to give Union access to the records so that it could compile the information. Safeway made no attempt to do either; thus, we agree with the NLRB that the information should be provided to Union.

The NLRB's cross-application for enforcement of its order is granted.