**UNITED STATES TESTING COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 97–1687.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 1998.

Decided Nov. 13, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 20, 1999.\*

---

\* Circuit Judge Sentelle would grant the petition for rehearing.

Joseph P. Paranac, Jr. argued the cause for petitioner. With him on the briefs was David F. Jasinski.

Richard A. Cohen, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Linda Sher, Associate General Counsel, and John D. Burgoyne, Acting Deputy Associate General Counsel. David S. Habenstreit, Supervisory Attorney, entered an appearance.

Robert D. Kurnick was on the brief for amicus curiae International Brotherhood of Electrical Workers Local Union 1936.

Before: GINSBURG, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

Dissenting opinion filed by Circuit Judge SENTELLE.

ROGERS, Circuit Judge:

The United States Testing Company petitions for review of a decision by the National Labor Relations Board finding violations of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, arising out of the Company's failure to provide information requested by the International Brotherhood of Electrical Workers Local Union 1936 ("the Union")

during contract negotiations.[1] The Union requested information about the individual claims experience of union and nonunion employees in order to respond to the Company's proposal that union employees contribute to the medical health benefits plan. The Company provided some aggregate health cost information to the Union, but not individual claims experience.

The Board found that the Company rejected the Union's request and ordered that the information be turned over without identifying the names of the individual claimants. On appeal, the Company contends that the Board's findings of unfair labor practices were unwarranted because the Board failed to support its finding that the Union met its burden to show the relevance of the claims information, and because the Board failed to find that the individual claims experience was confidential and protected from disclosure under *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). Because we conclude that the Company's contentions fail, we deny the petition and grant the Board's cross-application for enforcement of its order.

## I.

The International Brotherhood of Electrical Workers Local Union 1936 has represented a small unit of technical employees at the United States Testing Company for over thirty years. When the Company, a consumer products testing provider with approximately 85 to 100 employees, experienced an economic downturn, it sought a number of changes during contract negotiations beginning in August 1995 for a contract set to expire in October. One change was for the eleven or so unionized employees to begin making contributions to their health care costs, in the same amount (thirty percent) as nonunion employees.

Noting that it previously had rejected similar proposals, the Union again refused to agree to make contributions and stated that before it could make counterproposals to meet the Company's request to reduce health care costs by thirty percent, it needed certain information: Specifically, the Union asked the Company to provide the names of the union and nonunion employees (and their dependents) who participated in the health plan, the individual claims submitted by each plan member, and the benefits paid for each claim for the past eight months. The Company took the position that the Union did not need, and was not entitled to, the information concerning nonunion employees.

During the course of negotiations, the Company ultimately turned over to the Union (1) the premium rate and premium paid for union employees, (2) a "benefit and service analysis" consisting of the coverage rates, charges, and adjustments for medical and dental benefits for all employees, (3) a benefits cost analysis that the Company had prepared for single and family coverage, showing the monthly premium and the percentage of premiums paid by an employee contributing thirty percent; (4) the insurance carrier's summary of its experience monitoring the period of March 1994 through August 1995, including the total claims and premiums paid and the ratio of the two numbers; (5) a list of the names, premiums, and claims paid for each union employee; and (6) the total amounts of premiums and claims paid for union employees, nonunion employees, and for all employees. What the Company did not provide were the individual claims by each member of the plan (employees and their dependents), showing the nature of the claims submitted and benefits paid.

The Administrative Law Judge ("ALJ") found that the information the Company provided to the Union was insufficient because it did not adequately identify the costs of the benefits. To the extent that the Company was proposing that union employees

---

1. The Board concluded that the Company violated § 8(a)(5) and (1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158 (a)(5), (1), by refusing to furnish the Union with certain medical health plan information; § 8(a)(5), and (1), *id.* § 158(a)(5), (1), by implementing its final offer when a bargaining impasse did not exist; and

§ 8(a)(3) and (1), *id.* § 158(a)(3), (1), by permanently replacing striking employees in an unfair labor practice strike and refusing to reinstate them immediately when they ended the strike and unconditionally offered to return to work. *See United States Testing Co.*, 324 N.L.R.B. 136 (1997).

contribute towards the payment of the high costs of claims by nonunion employees (and their dependents), the ALJ found that the information sought by the Union was relevant. The Union explained that it sought to determine what types of claims generated the highest costs; for that, it needed individual claims information.[2] According to the ALJ, the Union's position was that if most of the large claims were for surgeries as opposed to physicians' visits and x-rays, the Union would examine the plan to determine whether the existing coverage for surgery could be changed to reduce costs. As an alternative to a thirty-percent contribution, the Union might propose managed care, pre-admission testing, outpatient surgery, a higher deductible, or a required co-payment. The ALJ noted that the Company's explanation in its pretrial affidavit for not providing the information was simply that the Union had failed to explain why the individual claims were relevant; the affidavit made no mention of a concern about privacy. Nevertheless, the ALJ concluded that the Company's bargaining notes reflected that it had raised a legitimate concern about privacy early in the negotiations regarding the names of the claimants, which, if connected with the claim itself, might reveal private medical information. Therefore, in ordering the Company to turn over the individual claims information, the ALJ directed that the names of the claimants not be disclosed.

The Board adopted the ALJ's findings and conclusions. Based on the information the Company supplied showing that the claims experience of union and nonunion employees was quite divergent, the Union was entitled to examine the issue and thereby justify its position that union employees need not contribute. Noting that health care costs are clearly a subject of mandatory bargaining and have become an increasingly important issue as the costs have risen, the Board observed that the Company

> should not have been surprised that the Union was seeking more than to juggle premium formulas, the role to which the

[Company] wished to confine it, but rather sought to participate meaningfully in structuring the benefits for which the [Company] wanted the bargaining unit to pay. In seeking to play a role in the solution, rather than simply making a substantial concession on the [Company's] say-so, the Union was fulfilling its role as the employees' statutory bargaining representative.

However, as the ALJ found, the names of the individual claimants were irrelevant and the Board adopted the ALJ's recommended order denying the Union access to that information, clarifying that the Union was entitled to the rest of the individual claims information without having to renew its request. In addition to concluding that the Company violated § 8(a)(5) and (1) by rejecting the Union's request for relevant information, the Board also concluded that the Company unlawfully declared an impasse and violated § 8(a)(3) and (1) by refusing to rehire the striking workers. The Company challenges all of the Board's findings of unfair labor practices.

## II.

The Company contends that the Board erred in two respects in ruling that the Company should have complied with the Union's request for the medical claims histories of the nonunion employees and their dependents: first, because its finding that the Union met its burden to show the relevance of the claims information is unsupported by the record and, second, in any event, the information was confidential and thus protected from disclosure under *Detroit Edison*. The Company further contends that the findings that no lawful impasse existed between the parties, especially given the time devoted to bargaining and the Union's bad faith, and that the strike by union employees was an unfair labor practice strike are unsupported by substantial evidence. Consequently, the Company contends, it was entitled to implement its final offer and did not commit unfair labor practices by hiring permanent replace-

---

2. At the hearing before the ALJ, the Union explained that its request did not include information about the individual medical diagnosis of any plan member (as distinct from the treatment or service provided), only the amount of the bill for the medical services and the amount actually paid by the carrier.

ments and refusing to rehire the union employees engaging in an economic strike.

■ The court applies the familiar substantial evidence test to the Board's findings of fact and application of law to the facts, *see NLRB v. United Ins. Co.,* 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and accords due deference to the reasonable inferences that the Board draws from the evidence, *see Peoples Gas Sys., Inc. v. NLRB,* 629 F.2d 35, 42 (D.C.Cir.1980), regardless of whether the court might have reached a different conclusion *de novo. Universal Camera,* 340 U.S. at 488, 71 S.Ct. 456.

■ The duty to bargain collectively "includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." *Detroit Edison,* 440 U.S. at 303, 99 S.Ct. 1123. In evaluating an employer's obligation to satisfy a union's request for information, this Court has long adhered to the view that the Board is to apply a liberal discovery-type standard, under which the requested information need only be relevant to the union in its negotiations. *Oil, Chemical & Atomic Workers Local Union No. 6–418 v. NLRB,* 711 F.2d 348, 359–60 (D.C.Cir.1983) (citations omitted); *see General Elec. Co. v. NLRB,* 916 F.2d 1163, 1168 (7th Cir.1990). Relevance is broadly construed, and in the absence of a countervailing interest, any requested information that has a bearing on the bargaining process must be disclosed. *Oil, Chemical,* 711 F.2d at 359–60. For information about employees in the bargaining unit, it is presumed that the requested information is relevant to the union's negotiations, and the employer must provide the information unless it can show the information is irrelevant. *Id.* at 359; *General Elec.,* 916 F.2d at 1171. By contrast, the burden is on the union to demonstrate the relevance of information about nonunion employees. *Oil, Chemical,* 711 F.2d at 359.

■ The Company maintains that the only indication the Union gave during their bargaining sessions for wanting the individual claims information was to be able to "intelligently and fairly respond" to the Company's proposal that union employees contribute thirty percent of the health plan costs. This bare assertion without further explanation, the Company maintains, fails to satisfy the Union's burden to show relevance. To the extent the Union envisioned proposals for increasing employees' co-payments, out-of-pocket expenses, or raising deductibles, the Company maintains that the Union could not meet its burden by relying on explanations first articulated in the hearing before the ALJ; that these explanations were insufficient; that expert evidence showed that the envisioned counterproposals did not require the Union to have the requested individual claims information; and that the Union never expressed any concern about the difference in the claims experience of union and nonunion employees.

Yet context is everything. The Union's generic statement requesting the information was made in response to the Company's proposal for a thirty-percent contribution by Union employees to the company-wide health insurance plan. By invoking rising health care costs, the Company necessarily put on the table the experience under the current plan. It follows that the Union met its minimal burden of establishing the relevance of the requested claims and benefits information about nonunion employees (and their dependents), who constituted the overwhelming majority of those covered by the health plan. Before deciding on a particular response to the Company's proposed thirty-percent contribution, the Union needed to know where the heavy claims usage was in order to formulate intelligent counterproposals; a union official testified that this is what he told the Company during negotiations. The information that the Union received from the Company showed a significant difference between the costs to the carrier for nonunion and union employees. By comparison with 1994, in which the ratio of benefits claimed to premiums paid for nonunion employees was 6 percent greater than that for union employees, in 1995, the same ratio was 79 percent higher for nonunion employees than for union employees. Further, in 1995 the claims

paid to non-union employees exceeded the premiums they paid, in contrast to the situation of the union members. In short, the claims experience for non-union employees was unprofitable for the Company while the experience for union employees was profitable. With this information, the Union understandably would want to examine the individual claims and usage experience of the majority, nonunion, employees.

Thus, the Company's contention that it had insufficient notice of the potential relevance of the requested information stems either from its own misunderstanding or from a preconceived notion that the Union's counterproposals could not include changes to the set of benefits provided under the current plan. In *National Union of Hospital & Health Care Employees,* 248 N.L.R.B. 631, 1980 WL 11976 (1980), *enforcement granted,* 673 F.2d 1314 (4th Cir.1981), when the Union sought to increase the employer's contribution to the Union Benefit Fund and the employer discovered that its contribution exceeded the costs of benefits to its employees, the employer sought financial information from the Union about the other individual employers who were contributing to the Fund. Although the employer never explicitly explained why all of the requested information was needed, the Board found that the Union was sufficiently informed why it was relevant to the employer's collective-bargaining duty. *Id.* at 632; *see also NLRB v. Brazos Elec. Power Coop.,* 615 F.2d 1100, 1101 (5th Cir.1980); *AT&T,* 309 N.L.R.B. 925, 928–29, 1992 WL 386683(1992). So too here the Union adequately informed the Company why it needed the information; the Company had sufficient notice at the time of bargaining that the information requested was needed for, and thus relevant to, the Union's negotiations.

The expert testimony offered by the Company does not change our conclusion. An insurance underwriter testified to the effect that the Union's request for individual claims information was unnecessary to formulate alternative proposals. Yet, as the ALJ noted, the underwriter focused on the Company's current health plan costs and adjustments that could be made by various cost-shifting arrangements without additional information. The expert's opinion did not address whether the individual claims information would be relevant to formulating a change in the Company's health plan itself, such as cutting certain benefits or conditioning certain kinds of coverage. Specifically, the underwriter focused on aggregate costs and benefits information bereft of any data showing individual claims experience that revealed what types of health care services were used most often and their costs. Although the ALJ credited the underwriter's testimony that the claims information sought by the Union was irrelevant to the impact on the costs of the Company's medical health insurance plan, the ALJ properly concluded that it was relevant to the Union's formulation of counterproposals to reduce health care costs by restructuring parts of the plan.

■■■ Insofar as the Company contends that the Board erred in failing to find that the individual claims information for non-union employees was confidential and, therefore, unavailable to the Union, the Company attempted neither to redact the requested information nor to explain why that was not possible. Yet it has long been established that the employer has the burden of seeking to accommodate the union's request for relevant information consistent with other interests rightfully to be protected. *See, e.g., Oil, Chemical,* 711 F.2d at 362; *Tritac Corp.,* 286 N.L.R.B. 522, 522 (1987). An employer is not relieved of its obligation to turn over relevant information simply by invoking concerns about confidentiality, but must offer to accommodate both its concern and its bargaining obligations, as is often done by making an offer to release information conditionally or by placing restrictions on the use of that information. *See, e.g., East Tennessee Baptist Hosp. v. NLRB,* 6 F.3d 1139, 1144 (6th Cir.1993);[3] *E.W. Buschman Co. v.*

---

**3.** In *East Tennessee,* the union requested wage and attendance records on non-union employees in order to verify that union and non-union employees were treated equally, as called for in the parties' collective bargaining agreement. The Hospital raised confidentiality concerns and suggested first, that a mutually agreed upon certified public accountant be hired to review the wage

*NLRB,* 820 F.2d 206, 208–09 (6th Cir.1987); *Safeway Stores, Inc. v. NLRB,* 691 F.2d 953, 958 (10th Cir.1982).

▮▮▮ Having made a reasonable accommodation the employer avoids a Board finding that it violated § 8(a)(5). *See, e.g., Detroit Edison,* 440 U.S. at 319–20, 99 S.Ct. 1123; *Buschman,* 820 F.2d at 209; *Soule Glass & Glazing Co. v. NLRB,* 652 F.2d 1055, 1098 (1st Cir.1981), *abrogated on other grounds, NLRB v. Curtin Matheson Scientific, Inc.,* 494 U.S. 775, 786 n. 7, 796, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990). The rationale for this placement of the burden derives from the interest in allowing the parties to work out through an informal process how their corresponding duties and responsibilities can be met. *See H.K. Porter Co. v. NLRB,* 397 U.S. 99, 103, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970); *NLRB v. Acme Indus. Co.,* 385 U.S. 432, 437–38, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *NLRB v. Truitt Mfg. Co.,* 351 U.S. 149, 152, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); *Oil, Chemical,* 711 F.2d at 358; *Florida Steel Corp. v. NLRB,* 601 F.2d 125, 129 (4th Cir. 1979). In other words, the onus is on the employer because it is in the better position to propose how best it can respond to a union request for information. The union need not propose the precise alternative to providing the information unedited. *Oil Chemical,* 711 F.2d at 362–63; *Tritac Corp.,* 286 N.L.R.B. at 522.

The Company's contention that the Union was not entitled to the individual claims information of nonunion employees draws heavily on the protection given to employee privacy rights by the Supreme Court in *Detroit Edison,* 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333. In that case, the union filed a grievance that senior employees were being bypassed for promotion on the basis of their scores on a new aptitude test that purportedly measured their ability to acquire the nec-essary job skills. *Id.* at 305, 99 S.Ct. 1123. The union sought the actual test that was administered and the individual applicants' test papers and scores in order to evaluate the accuracy and relevancy of the testing system. *Id.* at 308, 99 S.Ct. 1123. In reversing the Board's order to release the individual test scores to the union in the absence of the employees' consent, the Supreme Court emphasized the importance of protecting the privacy of individual employees who undoubtedly would be sensitive "to disclosure of information that may be taken to bear on his or her basic competence." *Id.* at 318, 99 S.Ct. 1123. In light of the employer's legitimate interest in preserving confidentiality, the Court concluded that although the union's request for information was arguably relevant, the employer sufficiently accommodated that request, and fulfilled its statutory duty to bargain, by offering to disclose the information upon the employees' written consent. *Id.* at 318–20, 99 S.Ct. 1123.

The Company was undoubtedly correct to raise concerns about the privacy rights of the non-union employees. *See United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3rd Cir.1980); *cf.* FED. R. CIV. P. 35. The Company, however, never attempted to redact the requested information, and never even claimed that it would be unduly burdensome or costly to do so. Even now the Company makes no claim that consent or notice or some other means of protecting employees' privacy rights could not have been achieved. Indeed, the Company had ready access to the information that the Union sought, specifically in the form of the insurance carrier's "explanation of benefits" statement listing the services, the provider of the services, the date rendered, the total costs, and the amount payable by the carrier in benefits. Information about health care costs for employees and their dependents

records and report if there were any violations of the collective bargaining agreement, and second, to provide only the records of non-union employees whom the union could identify as suspected of having received better treatment with regard to absenteeism. 6 F.3d at 1141, 1142. The Sixth Circuit reversed the Board, concluding that the Hospital had "offered reasonable alternative solutions which would have allowed the union to ascertain whether the contracts were evenly applied while protecting the confidential records of non uni[on] employees." *Id.* at 1144–45. Under those circumstances, the court concluded, "it was incumbent upon the Union to demonstrate that its need ... outweighed the Hospital's interest in maintaining the confidentiality of its records: *Id.* at 1144.

was not, so far as the record reveals, otherwise available to the Union.

 In any event, since the Company made no effort to accommodate the Union's request for individual claims information, by redaction or otherwise, the Board was not required to decide whether a particular form of accommodation was sufficient and did not unduly restrict the information that the Union requested. As ordered by the Board, the confidentiality of their identities as to specific medical claims is protected. *See Johns–Manville Sales Corp.v. International Chem. Workers Local 60,* 252 N.L.R.B. 368, 368, 1980 WL 12424 (1980).

 To the extent that the Union sought individual claims history, the Board likewise could properly find that the Company rejected the Union's request. The Company's suggestion that the summaries and cost benefit analyses that it provided somehow reflects the type of accommodation contemplated by *Detroit Edison* is unpersuasive. The information that the Company provided did not enable the Union to develop alternative proposals other than those in the nature of the Company's proposal for a percentage-cost contribution. Nothing required the Union to confine its thinking on cutting the Company's health care costs to the current plan, and to the extent the Company attempted to do so, it was interfering with the Union's ability to fulfill its responsibility to represent its members' interests in bargaining. *See Nat'l Union of Hospital & Health Care Employees,* 248 N.L.R.B. at 633.

 In light of the foregoing, this court can quickly dispose of the Company's other contentions. Its unlawful refusal to supply the requested medical claims information precluded the Company from declaring an impasse. *See, e.g., NLRB v. Palomar Corp.* 465 F.2d 731, 734–35 (5th Cir.1972); *Cone Mills Corp. v. NLRB,* 413 F.2d 445, 449–50 (4th Cir.1969). Because no genuine impasse was reached, the Company could not lawfully implement the terms of its final offer. *See, e.g., NLRB v. Katz,* 369 U.S. 736, 741–42, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); *Palomar,* 465 F.2d at 734–35; *Cone Mills,* 413 F.2d at 449–50. Therefore, the union employees' re-

fusal to return to work under the terms of the Company's final offer constituted an unfair labor practice strike rather than an economic strike. *See, e.g., NLRB v. Int'l Van Lines,* 409 U.S. 48, 50–51, 93 S.Ct. 74, 34 L.Ed.2d 201 (1972); *General Indus. Employees Union, Local 42 v. NLRB,* 951 F.2d 1308, 1311 (D.C.Cir.1991).

Accordingly, we deny the petition and grant the Board's cross-application for enforcement of its order of October 29, 1997.

SENTELLE, Circuit Judge, dissenting:

I do not quarrel with the majority's basic statement of the facts. I restate a few for emphasis.

In the course of contract negotiations, the International Brotherhood of Electrical Workers Local Union 1936 ("the Union") sought disclosure of claims information concerning the health benefit plan of petitioner United States Testing Company. As the majority recognizes:

> [T]he Company ultimately turned over to the Union (1) the premium rate and premium paid for union employees, (2) a "benefit and service analysis" consisting of the coverage rates, charges, and adjustments for medical and dental benefits for all employees, (3) a benefits cost analysis that the Company had prepared for single and family coverage, showing the monthly premium and the percentage of premiums paid by an employee contributing thirty percent; (4) the insurance carrier's summary of its experience monitoring the period of March 1994 through August 1995, including the total claims and premiums paid and the ratio of the two numbers; (5) a list of the names, premiums, and claims paid for each union employee; and (6) the total amounts of premiums and claims paid for union employees, nonunion employees, and for all employees.

Maj. Op. at 17.

The only thing that the Union wanted that the petitioner did not turn over was the individual claims made by nonunion individual employees and their dependents, showing the nature of the claims submitted and the benefits paid. The only showing of relevance

that the Union made for the demand for this personal information was the insistence that it needed it to be able to "intelligently and fairly" respond to the proposal by petitioner that Union employees contribute thirty percent of the health plan costs. Nevertheless, the majority maintains that the company was required to divine the relevance of the requested information from the "context" of the negotiations. *Id.* at 19. Such a requirement is inconsistent even with the liberal "discovery-type standard" used in determining relevance since *the Union* had the burden of demonstrating the relevance of information relating to nonunion employees. *See Oil, Chemical & Atomic Workers Local Union No. 6–418 v. NLRB,* 711 F.2d 348, 359 (D.C.Cir.1983).

I emphasize again that it claimed to need this information in addition to the six categories of information the company had already provided. For this failing, the company, not the Union, was cited for and found guilty of an unfair labor practice by the National Labor Relations Board. The court upholds that Board decision.

As the majority recognizes, the Supreme Court has afforded to management the right to protect the privacy interests of its employees in complying with Union demands even for relevant information. *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). Assuming that the Union's minimum showing of relevance in the present case is sufficient, I fail to see how the privacy interest could be much higher than we have before us in the case today. The Union, armed with its generic desire to "intelligently" represent its members, demands the individualized detail on the medical history of the nonunion workers whom it neither does nor can represent. The majority faults the petitioner for not furnishing the information in a redacted form, but neither the majority nor the Board explains why the six categories of information furnished are not at least the functional equivalent of redacted claims so far as relevance to negotiation is concerned nor explains how redaction would be adequate protection for the privacy of employees in a workforce no greater than 200 in number in which identity might well

be surmised by even redacted medical data. As in the case of relevance, I would place the burden of proof concerning the adequacy of the company's accommodation on the Union. Where a company has "raised its concern over the confidentiality of the records involved," it becomes "incumbent upon the Union to demonstrate that its need for the materials outweighed the [company's] interest in maintaining the confidentiality of the records." *East Tennessee Baptist Hosp. v. NLRB,* 6 F.3d 1139, 1144 (6th Cir.1996). Here, the Union has not come close to meeting its burden of proof.

Indeed, even if the burden of proof were on the company, I would still hold that the company adequately accommodated the Union's request. In order to address confidentiality concerns, the company merely refused to provide the Union with the information in the form and manner it demanded. Instead of providing individual claims data for the nonunion employees, the company provided a wealth of claims information, including the aggregate "total claims and premiums paid" for nonunion employees. Yet, a "refusal to disclose the requested records *in the form and manner demanded by the Union*" does not constitute a failure to bargain. *Id.* at 1143–44. Moreover, the Union itself was unyielding in its demands and proposed no accommodations that might be agreeable to both parties. The Union did not even propose the accommodation ultimately implemented by the NLRB order—redaction of the names on individual claims. Therefore, under the circumstances, the company's attempts to accommodate the Union, far from being nonexistent as the majority suggests, were more than adequate.

In sum, the majority fails to grasp the significance of the privacy interests at stake in this case and to appreciate the lengths to which the company went to provide the Union with the information it requested while protecting the privacy of nonunion employees. As in *Detroit Edison,* in the instant case there is a "total absence of evidence that the [company] fabricated concern for employee confidentiality only to frustrate the Union in the discharge of its responsibilities." 440

U.S. at 319–20, 99 S.Ct. 1123. Therefore, I would grant the petition for review.