# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 13, 2005          Decided June 16, 2006

No. 04-1411

FASHION VALLEY MALL, LLC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
05-1027 & 05-1039

———

On Petitions for Review of an Order of the
National Labor Relations Board

———

William M. Lines argued the cause for petitioner Fashion Valley Mall, LLC. With him on the briefs was Theodore R. Scott.

Anne Marie Lofaso, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Arthur F. Rosenfeld, Acting General Counsel, Margery E. Lieber, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and David S. Habenstreit, Supervisory Attorney.

Before: GINSBURG, *Chief Judge,* and SENTELLE, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge.*

Opinion for the Court filed by *Chief Judge* GINSBURG.

Concurring opinion by *Senior Circuit Judge* WILLIAMS.

GINSBURG, *Chief Judge*: Fashion Valley Mall, LLC, which is owned and operated by the Equitable Life Assurance Society and ITC Fashion Valley Corporation, allows individuals and organizations to engage in expressive activities on its premises if they first get a permit from the Mall. In order to receive a permit, a party must agree to abide by Fashion Valley's rules and regulations, which prohibit urging consumers to boycott any of the Mall's tenants. The National Labor Relations Board held Fashion Valley violated § 8(a)(1) of the National Labor Relations Act both by maintaining this requirement and by excluding from its premises certain union handbillers.

We hold that whether Fashion Valley violated the Act depends upon whether it had the right, under California law, to maintain and enforce its anti-boycott rule. Because the underlying question is one of state law as to which we can only speculate, we certify that question to the Supreme Court of California for an authoritative answer.

## I. Background

Fashion Valley owns a large shopping mall in San Diego, California. The Company permits expressive activities by those who apply for a permit and agree to abide by its regulations. An applicant for a permit must state the purpose of the proposed expressive activity; submit a copy or a description of any materials and signs to be used; list the individual(s) who will participate; provide a $50.00 refundable cleaning deposit;

purchase insurance as necessary; and, per Rule 5.6.2, agree to abstain from:

> Urging, or encouraging in any manner, customers not to purchase the merchandise or services offered by any one or more of the stores or merchants in the shopping center.

In October 1998 approximately 30 "members and supporters" of the Graphic Communications International Union gathered outside the Robinsons-May department store at the Mall to protest actions taken by The San Diego Union-Tribune newspaper. The Union decided to stage the protest there because the store advertises in the paper and is located not far from the paper's premises.

The protestors distributed a handbill addressed "Dear customer of Robinsons-May" that outlined the Union's grievances against the newspaper while making clear "[t]o the employees of Robinsons-May ... [the] dispute is with The San Diego Union-Tribune. We are not asking you to cease working for your employer." The Union encouraged patrons and employees only to "[c]all Gene Bell, CEO at the Union Tribune." In closing, the handbill mentioned that "Robinsons-May advertises with the Union-Tribune." After about 15 minutes a representative of Fashion Valley approached the protestors, explained that a permit was required for expressive activity, and told them to leave the premises, which they did.

Thereafter, instead of applying for a permit, the Union filed a charge with the Board alleging that Fashion Valley had violated § 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), which makes it an unfair labor practice to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7" of the Act, to wit,

... the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

29 U.S.C. § 157. An Adminstrative Law Judge held the Company had violated § 8(a)(1), and the Board affirmed, albeit on a different ground. The Board reasoned:

[We] look[] to State law to ascertain whether an employer has a property right sufficient to deny access to nonemployee union representatives.... [A]n employer cannot exclude individuals exercising Section 7 rights if the State law would not allow the employer to exclude the individuals.... California law permits the exercise of speech and petitioning in private shopping centers, subject to reasonable time, place, and manner rules adopted by the property owner.... Rule 5.6.2, however, is essentially a content-based restriction and not a time, place, and manner restriction permitted under California law.... [T]he purpose and effect of this rule was to shield [Fashion Valley's] tenants, such as the Robinsons-May department store, from otherwise lawful consumer boycott handbilling. Accordingly, we find [Fashion Valley] violated Section 8(a)(1) by maintaining Rule 5.6.2.

*Equitable Life Assur. Soc'y of the United States, et al.,* 343 N.L.R.B. No. 57 (Oct. 29, 2004) (internal citations and quotations omitted). The Board also held the Company violated § 8(a)(1) by "requir[ing] [the Union's] adherence to [the] unlawful rule" in its permit application process. *Id.* Consequently, the Board ordered Fashion Valley to rescind Rule 5.6.2.

II.  Analysis

Fashion Valley petitions for review, and the Board cross-applies for enforcement, of the order.  We enforce a Board order if the factual findings upon which it rests are supported by "substantial evidence," *see United States Testing Co. v. NLRB*, 160 F.3d 14, 19 (D.C. Cir. 1998), and the Board's interpretation of the Act is reasonable and consistent with applicable precedent, *see Local 702, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*, 215 F.3d 11, 15 (D.C. Cir. 2000).  When the Board has occasion to interpret state law, however, our review is ordinarily *de novo.  See Cellwave Tel. Servs. L.P. v. FCC*, 30 F.3d 1533, 1537 (D.C. Cir. 1994) (no deference afforded to agency interpretation of state law absent agency expertise on the subject).

As mentioned, the Board determined Fashion Valley violated § 8(a)(1) in two ways -- first, by "maintaining" Rule 5.6.2 and, second, by "enforcing" Rule 5.6.2 against the Union. In the latter regard, the Board reasoned that "inasmuch as the application process requires adherence to an unlawful rule," Fashion Valley "violated Section 8(a)(1) by enforcing Rule 5.6.2, i.e., by requiring the instant application for a permit." 343 N.L.R.B. No. 57.

In *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992), the Supreme Court held it is not a violation of the Act for an employer to bar nonemployee union organizers from its property "except in the  rare case where the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels." *Id.* at 537-38 (emphasis and internal quotations omitted).  Under the Board's reading of *Lechmere*, which Fashion Valley does not

dispute, an employer may, without violating § 8(a)(1), exclude a nonemployee union representative from its property if and only if it has that right under state law.[*] *See Waremart Foods v. NLRB*, 354 F.3d 870, 872 (D.C. Cir. 2004).

Our review of the Board's holding in the present case requires us to resolve two further questions: (1) State law aside, did Fashion Valley's requirement of a permit for expressive activity, conditioned as it was upon the Union's agreement not to urge a boycott of any Mall tenant, violate § 8(a)(1) of the Act? (2) If so, was Fashion Valley acting within its rights under California law?

A. The National Labor Relations Act

Fashion Valley does not challenge the Board's position that maintenance of the anti-boycott rule violated § 8(a)(1) if the rule also violated the laws of California (of which more later). The Company does, however, contest the Board's further determination that Fashion Valley violated the Act a second time when it enforced Rule 5.6.2 by conditioning the Union's demonstration upon its adherence to the Rule. In Fashion Valley's view, there is simply not substantial evidence the Union intended to boycott Robinsons-May or any other Mall tenant; therefore the Union would have received a permit had it applied for one. Further to this point, Fashion Valley argues that because its permit application "does not highlight Rule 5.6.2, which only consumes three of the 71 lines included in Article 5," the Board cannot reasonably infer the Union "based its

---

[*] Fashion Valley does not challenge the Board's assumption that because it is an "employer" within the meaning of § 2(2) of the Act, 29 U.S.C. § 152(2), it may be held liable for interfering with the § 7 rights of the employees of another employer with which it has no agency relationship -- a matter upon which we express no opinion.

refusal to apply for a permit on Rule 5.6.2" nor, hence, that the rule interfered with § 7 rights.

The Board argues that Fashion Valley interfered with the employees' § 7 rights when it sought to force the Union members to forgo a lawful method of protest. If the Board correctly understands that under California law Fashion Valley did not have the right to exclude the demonstrators, then, the Board maintains, the Mall violated § 8(a)(1).

We agree with the Board. Although Fashion Valley is correct that there is not substantial evidence the Union intended to boycott any of the Mall's tenants, nothing in the Act prohibits the Union from carrying out a secondary boycott by means of peaceful handbilling. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trade*s *Council*, 485 U.S. 568, 583-87 (1988). In subjecting the Union to a permit process that required it to forswear use of this lawful tactic, therefore, Fashion Valley interfered with the employees' rights under § 7 of the Act. That Rule 5.6.2 comprised only three lines of text is irrelevant; it imposed an unlawful condition for obtaining a permit. Enforcement of Rule 5.6.2 therefore violated § 8(a)(1) -- unless, that is, the Company had the right under California constitutional law to exclude the employees altogether. *See Waremart*, 354 F.3d at 872.

B. The Constitution of California

The Supreme Court of California has ruled that "the California Constitution protect[s] speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 910, 153 Cal. Rptr. 854, 860 (1979). Fashion Valley therefore seeks refuge in the "reasonably exercised" limitation upon petitioning, pointing out that the Court in

*Pruneyard* also said a private shopping center is not required to host expressive activities that "interfere with normal business operations," 153 Cal. Rptr. at 860-61, and reasoning that Rule 5.6.2 is lawful because it merely protects the Mall "from disruption of normal business operations and ... interference with customer convenience." *H-CHH Assocs. v. Citizens for Representative Gov't*, 193 Cal. App. 3d 1193, 1208, 238 Cal. Rptr. 841, 850 (Cal. App. 2d Dist. 1987); *see also Diamond v. Bland*, 3 Cal. 3d 653, 666, 91 Cal. Rptr. 501, 509 (1970) (parties may restrict speech in order to prevent "obstruction of or undue interference with normal business operations"); *In re Hoffman*, 67 Cal. 2d 845, 852, 64 Cal. Rptr. 97, 101 (1967) (protestors not permitted to "interfere[] with the conduct of the railroad business").

In the Company's view, that is, the Union's constitutional right to engage in expressive activities does not extend to any activity that interferes with the Mall's primary purpose, namely, "to facilitate the ease of commerce and to promote the business of its merchant tenants." *H-CHH Assocs.*, 238 Cal. Rptr. at 859. According to Fashion Valley, in urging a boycott "what the protestor is asking the customer to do ... is inherently inconsistent with the dedicated purpose of the shopping center -- the promotion of merchandise and services in the shopping center."

Alternatively, Fashion Valley argues, even if there is no "primary purpose" doctrine in *Pruneyard* and *H-CHH Associates*, the Mall is not a "public forum" under the laws of California and therefore its regulation of expressive activity "need only be reasonable"; yet the Board failed to address the "forum analysis" undertaken by the Supreme Court of California in *Clark v. Burleigh*, 4 Cal. 4th 474, 482-489, 14 Cal. Rptr. 2d 455, 460-65 (1992). Under Fashion Valley's reading of *Clark*, all "property other than streets and parks," and hence the Mall,

is a non-public forum.

Finally, Fashion Valley argues that even if the Mall is a public forum, Rule 5.6.2 is a permissible, content-neutral regulation of speech. In *Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal. 4th 352, 93 Cal. Rptr. 2d 1 (1992), the Supreme Court of California, defining a "content-neutral" regulation as a restriction "justified without reference to the content of the regulated speech," 93 Cal. Rptr. 2d at 10, upheld an ordinance that banned "all solicitation in certain defined places" and "aggressive" solicitation in any public place, 93 Cal. Rptr. 2d at 7. Fashion Valley maintains Rule 5.6.2 is similarly content-neutral because it "prohibits all boycott appeals directed at the Mall's stores or any of the goods or services sold by Mall merchants, regardless of the subject matter of the protest or the protestor's ... viewpoint."

The Board disagrees with Fashion Valley on all counts. First, the Board argues Fashion Valley misreads *Pruneyard* and *H-CHH Associates* to mean "California has created a forum open to all speech except for that criticizing the actions of mall tenants." In the Board's view, the reference in *H-CHH Associates* to "freedom from disruption of normal business operations" means only that a shopping mall may impose appropriate time, place, and manner restrictions on expressive activity.

Second, relying upon the Ninth Circuit's decision in *Glendale Associates, Ltd. v. NLRB*, 347 F.3d 1145 (2003), the Board maintains the Mall is indeed a "public forum" under the State Constitution. In *Glendale* the court read *Pruneyard* to mean "privately-owned shopping centers are required to respect individual free speech rights on their premises to the same extent that government entities are bound to observe state and federal free speech rights." *Id.* at 1154. The Board also adverts to our

decision in *Waremart*, in which we held that under California law a grocery store could exclude union handbillers from its parking lot, but in passing noted that in *Pruneyard* the Supreme Court of California "reasoned that shopping centers had become the functional equivalents of 'miniature downtowns' and should be treated as public forums, from which expressive activity cannot be entirely excluded." 354 F.3d at 872.

Finally, the Board argues Rule 5.6.2 is not content-neutral but rather a "content-based restraint on speech because it facially prohibits persons from urging or encouraging, in any manner, customers not to purchase the merchandise or services offered by any Mall tenant." In *Glendale*, the Ninth Circuit held a shopping mall regulation that prohibited the distribution of written materials mentioning by name any "tenant, owner, or manager" of the mall, 347 F.3d at 1147, was not content-neutral because it was "based on hostility ... towards the underlying message expressed." *Id.* at 1157-58. So, too, says the Board of Fashion Valley's ban on boycotts: "Indeed the Shopping Mall admits that it maintains the rule because it disfavors speech that may adversely affect its business."

Neither party's argument is fully persuasive. Each marshals the California case law to advantage, but the fact remains that no California court has squarely decided whether a shopping center may lawfully ban from its premises speech urging the public to boycott a tenant. The case closest in point is *UNITE v. Superior Court of Los Angeles County*, 56 Cal. App. 4th 996, 1020, 65 Cal. Rptr. 2d 838, 854 (Cal. App. 2d Dist. 1997), which involved "Prohibition[s] Against Interference With Mall Tenants" very similar to Fashion Valley's Rule 5.6.2. Although the court said the anti-boycott rules "could lead to impermissible content-based regulation of expressive activities" in violation of the State Constitution, it did not determine whether the rules actually were unconstitutional because the issue had not been

preserved. 65 Cal. Rptr. 2d at 854-55. The Supreme Court of California we think could reasonably agree with either Fashion Valley or the Board.

### III. Conclusion

In sum, whether Fashion Valley violated § 8(a)(1) of the Act depends upon whether it could lawfully maintain and enforce an anti-boycott rule -- a question no California court has resolved. Because we owe no deference to the Board's interpretation of the Constitution of California and can only guess how the Supreme Court of California would resolve the issue, we shall certify to that court the following question:

> Under California law may Fashion Valley maintain and enforce against the Union its Rule 5.6.2?

Pursuant to Rule 29.8 of the California Rules of Court, we may certify "a question of California law if: (1) the decision could determine the outcome of a matter pending ... and (2) there is no controlling precedent." Cal. R. Ct. 29.8(a). Here, both requirements are met. Accordingly, we shall hold this case in abeyance pending a response from that court.

*So ordered.*

WILLIAMS, *Senior Circuit Judge, concurring in the certification to the Supreme Court of California*: I write separately to underscore what the decision does not hold and to explain where I depart from the majority's reasoning. First, as Maj. Op. at 6 n.* observes, we take no position on whether a firm connected to a labor dispute or relationship only by virtue of being the landlord of a firm (Robinsons-May) that advertises with the disputing employer (the San Diego Union-Tribune) is subject to the duties (vis-à-vis a union seeking to handbill against the Union-Tribune) that the National Labor Relations Act ("NLRA") imposes on "employers" with respect to their own employees (and unions seeking to represent them). Fashion Valley raised no such issue.

Second, the Board found that, assuming that Rule 5.6.2 violated California law, Fashion Valley had violated § 8(a)(1) both "by maintaining" Rule 5.6.2, *Equitable Life Assur. Soc'y of the United States, et al.*, 343 N.L.R.B. No. 57 at 2 (Oct. 29, 2004), and "by enforcing" the rule, *id.* Fashion Valley didn't challenge the Board's "maintenance" finding; thus we reach no holding on that issue, and the question of California constitutional law is properly before us (and in turn certified).

But Fashion Valley did challenge the Board's conclusion that it (Fashion Valley) violated § 8(a)(1) "by *enforcing* Rule 5.6.2, i.e., by requiring the instant application for a permit," *id.* (emphasis added), and I cannot agree with the court's reliance on that finding—reliance that appears quite unnecessary in view of the Board's unchallenged "maintenance" conclusion. I see three problems with the majority's enforcement analysis. First, the union's proposed leafleting didn't run afoul of Rule 5.6.2. Although the Board incorporated the ALJ's finding that "the Union's October 4 leafleting had, as its primary object, a consumer boycott of the Mall's Robinsons-May store," *id.* at 1, 7, the majority correctly reverses that finding. See Maj. Op. at 7 (agreeing

with Fashion Valley's contention "that there is not substantial evidence the Union intended to boycott any of the Mall's tenants," *id*. at 6). It is hard to see how a firm can "enforce" a rule in an episode to which the rule is irrelevant.

Having removed the factual support from the Board's position, the court goes on to affirm on different grounds, disregarding the familiar principles of *Securities and Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). The court says that "Fashion Valley interfered with the employees' rights" by "subjecting the Union to a permit process that required [the Union] to forswear use of a lawful tactic." Maj. Op. at 7. This evidently rests on the Board's conclusion that "inasmuch as the application process requires adherence to an unlawful rule, [Fashion Valley] *may not enforce it*." 343 N.L.R.B. No. 57 at 2 (emphasis added). The referent for the word "it" is unclear. The majority reads "it" as the application process. Thus, under the majority's reading, a firm imposing an application requirement "enforces" all of its rules (at least ones that a successful applicant must pledge to obey) anytime that it insists on an application. The majority thus eviscerates much of the distinction between enforcement and maintenance. Fashion Valley maintained Rule 5.6.2, but in no way enforced it.

Alternatively, "it" may refer to Rule 5.6.2. This seems more likely, in view of the Board's finding that the union intended a boycott (which we now reverse), and its later reference to Fashion Valley's "enforcing Rule 5.6.2." *Id*. On this reading, of course, the Board's analysis would founder for want of factual support.

Second, the majority's enforcement theory is further marred by the union's complete unawareness (on the date of

the supposed "enforcement") of the very existence of Rule 5.6.2 or its content. The evidence suggests that Fashion Valley excluded the union on October 4 simply because the union refused to apply for a permit, not because Fashion Valley "enforced" Rule 5.6.2 in any non-metaphysical way.

Lastly, the majority notes that under *Edward J. DeBartolo Corp. v. Fla. Gulf Cost Bldg. & Constr. Trades Council*, 485 U.S. 568, 583-87 (1988), nothing in the NLRA barred the union from carrying out a secondary boycott by peaceful handbilling. Maj. Op. at 7. True. But of course that tells us little or nothing about the possible affirmative duties of parties subjected to secondary boycotts.

In sum, the majority stretches ordinary language (and the case law) too far—and substitutes its own reasoning for the Board's—in concluding that when a company conditions leafleting on submission of an application it automatically "enforces" any rule (that a successful applicant would be required to obey) against persons who have neither contemplated conduct that might violate the rule nor learned of the rule's existence.